THOMAS McLOGHLIN et al., as Executors, etc., Respondents, *v.* THE NATIONAL MOHAWK VALLEY BANK, Appellant.

McL., plaintiff's testator, opened an account with defendant in 1853, and made deposits and drew checks against his account until May, 1865. Thereafter there was no entry of debit or credit to his account. In an action to recover the balance of the account, plaintiff claimed and was allowed interest thereon. Upon the books of the bank and in McL.'s pass book, up to the time the entries ceased, were entries of interest at different rates. It appeared that in 1867, McL., in an interview with defendant's president at its banking house during business hours, was informed by that officer that the bank could pay no interest and he was directed to withdraw his money, and in a subsequent interview with defendant's cashier, he was informed that the bank did not pay interest, and advised, if he desired interest, to deposit his money in a savings bank, to which McL. replied that he would leave his money until he could get some other place to put it. *Held,* that the allowance of interest was error.

Plaintiffs were permitted to show that McL. had deposits in various other banks, upon which he was allowed interest. *Held,* that the reception of the evidence was error.

*McLoghlin* v. *Nat. M. V. Bank* (65 Hun, 342), reversed.

(Argued October 12, 1893; decided October 24, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made September 13, 1892, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. B. Rafter* for appellant. The evidence did not justify the referee in finding that there was an agreement on the part of the defendant to pay interest on the deposit of plaintiffs' testator. (*Pollock* v. *Pollock*, 71 N. Y. 137 ; *Sickles* v. *Flanagan*, 97 id. 224 ; *Hannigan* v. *Allen*, 127 id. 639 ; Code Civ. Pro. § 1338 ; *Bedlow* v. *N. Y. D. D. Co.*, 112 N. Y. 263 ; *Whetmore* v. *Bruce*, 118 id. 319.) If an implied agreement to pay interest could be found from the undisputed fact that some items of interest were credited in the account, such agreement was not made by the defendant. (*F. Bank* v. *N. Y. & S. C. Co.*, 4 Paige, 126 ; *O'Brien* v. *Young*, 95 N. Y. 428 ; *Van Rensselaer* v. *Jewett*, 2 id. 134 ; *N. Bank* v. *M. N. Bank*, 94 U. S. 326.) If from all the testimony a valid agreement on the part of the defendant to pay interest on said balance, at three per cent or any other rate, can be inferred, an agreement cannot be inferred to pay interest in perpetuity. ( *Viele* v. *Judson*, 82 N. Y. 32 ; *Clare* v. *Lockard*, 31 N. Y. S. R. 69.) It was competent to show by Mr. Alexander, the cashier, that no interest had been allowed or paid on the account since he became the cashier, and the rejection of that proof was error. It was competent as bearing upon the understanding of the parties. (*Nicholls* v. *Van Valkenburg*, 15 Hun, 230 ; *Poucher* v. *Scott*, 33 id. 229 ; *Gorham* v. *Price*, 25 id. 12 ; *Deshon* v. *Reynolds*, 17 id. 137.) An account between the testator and the Emigrant Industrial Savings Bank of the city of New York was put in evidence in toto, " for the sole purpose of establishing the fact that this account was an interest-bearing account," etc. This was erroneous. (*Carroll* v. *Deimel*, 95 N. Y. 252 ; *Stone* v. *State*, 138 id. 124 ; *Green* v. *Desbro*, 56 id. 334.)

*William P. Goodelle* for respondent.   The account of plaintiff's testator with the defendant was, incontrovertibly, an interest-bearing debt.   And the referee so found.   (*Esterly* v. *Cole*, 3 N. Y. 502; *Pelham* v. *Adams*, 17 Barb. 384; *R. G. Factory* v. *Reid*, 5 Cow. 587, 622; *Howell* v. *Adams*, 1 T. & C. 425; 68 N. Y. 314.)   The relation of the bank to its depositors is that of debtor and creditor.   As soon as a deposit is made it becomes the property of the bank, and the depositor has no special interest in it; the bank simply becomes his debtor, to the amount of the deposit, for money had and received, the same as if the money was loaned to a private individual.   (*A. N. Bank* v. *F. N. Bank*, 46 N. Y. 82; *Cragie* v. *Hadley*, 39 id. 131, 133; *C. Bank* v. *Hughes*, 17 Wend. 94; *Metropolitan* v. *Loyd*, 90 N. Y. 530; *Oddie* v. *N. C. Bank*, 45 id. 735, 742; *Jordan* v. *Bank*, 74 id. 473.) Interest can be stopped only by either paying and discharging the debt, with interest, or by making a legal tender therefor. (*Read* v. *City of Buffalo*, 74 N. Y. 463.)   The conversations put in evidence by appellant do not constitute a new legal and binding contract between the parties; there is not a semblance of a consideration to support any such contract, and the minds of the parties never met upon any new agreement, and the referee so finds.   (1 Add. on Cont. 1–16; *Halliday* v. *Hart*, 30 N. Y. 474; *Justin* v. *Lang*, 42 id. 497.)   The cashier or president of the bank had neither power to make nor to abrogate a contract without authority and direction from the board of directors.   (*F. N. Bank* v. *Tisdale*, 18 Hun, 151; *U. S.* v. *City Bank*, 21 How. [U. S.] 364; *Bank of U. S.* v. *Dunn*, 6 Pet. 51; *Bank of Metropolis* v. *Jones*, 8 id. 12; *Brisbane* v. *Adams*, 3 N. Y. 129.)   One of appellant's contentions was, that plaintiff's testator had waived a tender of the amount due him, and that plaintiff is now estopped from claiming that such tender was not made.   There is no such defense set up in the answer, nor was any such question raised before the referee, either by a request to find or otherwise, by appellant.   (*Holmes* v. *Holmes*, 9 N. Y. 525; *Sidenberg* v. *Ely*, 90 id. 257, 266; *Halpin* v. *P. Ins. Co.*, 118 id. 165; *Thomas* v. *Evans*,

10 East, 101; *Strong* v. *Blake,* 46 Barb. 227, 229; *Bakeman* v. *Pooler,* 15 Wend. 637; *Dunham* v. *Jackson,* 6 id. 22, 34; *Krauss* v. *Arnold,* 7 Moore, 59; *Nelson* v. *Plimpton,* 55 N. Y. 484.) The Statute of Limitations does not run against a debt, deposit or account like this one until a demand is made for it of the bank. (*Howell* v. *Adams,* 68 N. Y. 314, 321; *Payne* v. *Gardiner,* 29 id. 146; *In re Waldron,* 28 Hun, 481; *Bank* v. *Bank,* 5 id. 605; *Downes* v. *P. Bank,* 6 Hill, 297; *Craigie* v. *Hadley,* 99 N. Y. 133.) The defendant is the same bank, the same creation, as when the plaintiff's testator originally deposited money in it in 1852. The fact that it was changed from a state bank to a national bank, or in other words, performed its functions under different laws, does not operate to change the bank; it remains the same creation. All the property and all the liabilities of the old bank remain the same; none of the relations between the bank and its customers are changed. (*Coffey* v. *N. Bank,* 46 Mo. 140; *Maynard* v. *Bank,* 1 Brewst. 483; *Kelsey* v. *Bank,* 69 Penn. St. 426; *Brown* v. *Mayor, etc.,* 9 Hun, 587–595.) The exceptions taken by the defendant to the evidence as to the value of the use of money in the locality of the defendant are not well taken. (*Cornell* v. *Markham,* 19 Hun, 275; *Kavanagh* v. *Wilson,* 70 N. Y. 177; *Walls* v. *Randall,* 16 Hun, 33; 81 N. Y. 164; *Nicholls* v. *Van Valkenburgh,* 15 Hun, 230; *Dishno* v. *Reynolds,* 17 id. 137.) The exceptions to the evidence of the fact that the deceased had on deposit in different banks sums of money, all on interest, were not well taken. (*Burlew* v. *Hubbell,* 1 T. & C. 235; *Pomeroy* v. *Pierce,* 5 Hun, 119; *Pontius* v. *People,* 21 id. 328; 82 N. Y. 339; *Buckman* v. *Chaplin,* 1 Allen, 70; *Tibbetts* v. *Sumner,* 19 Pick. 166; *Quincey* v. *White,* 63 N. Y. 370–380; *Beckley* v. *Jarvis,* 55 Vt. 348; 1 Phillips on Ev. 111, 704; *Hotchkiss* v. *G. Ins. Co.,* 5 Hun, 90.) While submitting that none of the exceptions referred to under the last point were well taken, and that the evidence was competent, yet, if this court should hold the same to be incompetent, then error in its admission will not lie, because it was harmless, and the defendant could in no possible manner

have been prejudiced thereby. (*Quincey* v. *White*, 63 N.Y. 370 ;
*Petrie* v. *Petrie*, 38 N. Y. S. R. 496 ; *Avery* v. *Starbuck*, Id.
900 ; *Hine* v. *R. Co.*, 33 id. 758 ; *Loss* v. *Wilkinson*, 110
N. Y. 195 ; *Bowland* v. *Hegan*, 59 id. 643 ; *Thorne* v. *Lurck*,
94 id. 90 ; *Bronson* v. *Tuthill*, 3 Keyes, 32.)   The offer to pay
an inadequate amount, allowing no interest, and imposing the
condition that it must be, if received, in full satisfaction of
the plaintiff's claim, does not constitute a tender to avoid
interest after demand. (*Noyes* v. *Wyckoff*, 114 N. Y. 204 ;
*Wood* v. *Hitchcock*, 20 Wend. 47 ; *Livingston* v. *Harrison*,
2 E. D. Smith, 197.)

Earl, J.   This action was brought by the plaintiffs to
recover money deposited by their testator with the defendant.
The amount of the principal sum claimed is $2,511.31.  The
testator opened an account with the defendant in August, 1853,  ·
and from time to time made deposits in the bank, and drew
checks against his account until May, 1865, when the amount
now claimed was the balance due him.   The testator died in
November, 1888, and from May, 1865, until that time, there
was no entry of debit or credit in his account.   Before the
commencement of this action the plaintiffs demanded of the
defendant the balance of principal due them, with interest
thereon from May 25th, 1865, to the date of the demand.   The
defendant offered to pay the principal, but refused to pay
interest, and the controversy between these parties is whether
upon the facts proved it was bound to pay interest upon the
balance claimed.

The sole evidence given by the plaintiffs to prove any
agreement to pay interest upon the money deposited by the
testator, was the entries in his account kept in the books of
the bank and in the pass book held by him of credits
from time to time of interest.   It appears from the account,
that interest was credited upon the balances for a portion of
the time at the rate of five per cent, for another portion at the
rate of three and three-fourths per cent, and for another por-
tion at the rate of two and one-fourth per cent.   The referee

held that these credits were sufficient to show that the account was an interest-bearing account, and he reported in favor of the plaintiffs, giving them judgment for the principal sum, with interest thereon from the 25th of May, 1865, to the date of his report, at the rate of three per cent.

When the account was opened, and until 1867, Mr. Pomeroy was cashier of the bank, and for many years before and after 1867 Dean Burgess was its president; and after the death of Pomeroy, in 1867, Henry D. Alexander was its cashier. The referee found that in the latter part of the year 1867 the testator had an interview with Burgess, at which two of the directors of the bank were present, at its banking house during the usual business hours of the day; that Burgess, speaking to the testator concerning his deposit, said in substance, "you must draw your money; we can pay no interest;" to which the testator replied in substance, "that the bank would be crippled by the defalcation (having reference, probably, to the defalcation of the previous cashier), and they could afford to pay him interest; that it was not necessary for him to have the money;" that Burgess answered, "that it was contrary to the rules of the bank to pay interest; that the bank did not pay interest on deposits and he must withdraw his money; that they could pay no interest;" that afterwards, in the year 1869, the testator had an interview with the cashier, Alexander, at the defendant's banking house, during the usual hours of business; that the testator said to Alexander that "he had called there sometime ago and had talked about his deposits with the old gentleman (meaning Burgess), in the back room, who said they could not pay him interest;" that Alexander replied, "that is so, we don't pay anybody interest now; if you desire to deposit your money where they pay interest you had better take it to a savings bank;" and the testator said that "he would leave his money there until he could get some other place to put it;" that Alexander answered "all right, you can have your money any time you want it;" that some years afterwards the testator met the cashier, Alexander, in the village of Mohawk, after business

hours, and asked him if they had concluded to pay him any interest on his account, and Alexander replied "they had not; that they could not do it." Notwithstanding these facts, proved to the satisfaction of the referee and found by him, he held that there was a continued obligation on the part of the bank to pay interest on the balance of this account.

While it is true that the entries of interest in the bank's account with the testator furnished *prima facie* evidence that the interest was allowed in pursuance of some arrangement or agreement, they furnished no evidence as to the precise character of that agreement. They did not show what the rate of interest was to be, nor for what length of time, nor under what circumstances interest was to be paid. They certainly furnished no evidence that interest was to be paid to the testator on the balance of his account so long as he chose to leave his money on deposit there. It is perfectly consistent with the entries of interest in the account that the arrangement for the deposit and for the payment of interest was terminable at the option of either party. In 1867, when the testator had the interview with the president of the bank, it is clear that there was no subsisting arrangement for the payment of interest. He was then at the bank seeking for a promise from the bank to allow him interest, and it positively refused. In the subsequent conversation with the cashier it again clearly appears that there was no subsisting arrangement for the payment of interest, as the testator was seeking to make one. So that, upon the facts found by the referee, it seems to us that if some kind of arrangement for the payment of interest prior to May 25, 1865, could be found to have existed, that arrangement was not in force at the time of these conversations.

But, even if it was in force prior to these conversations, it is quite clear that it was then abrogated. We must assume that the president of the bank, with two directors, engaged in the business of the bank, in the banking office, to whom the testator applied in reference to the allowance of interest, had authority to act for the bank. He was there informed that the bank would pay him no interest; that it was contrary to

its rules to allow interest, and that he must draw his money. If the matter had rested there, and nothing more had been said, he could not after that have claimed interest on his account. He went away, apparently acquiescing in what was said to him, and after that he had no arrangement for the continued allowance of interest to him, and there was no binding contract to compel the bank to pay interest. The subsequent conversation with the cashier is still more explicit and signification. In that conversation the testator alluded to the conversation he had had with the president, and he was informed that the bank did not pay interest on deposits, and that if he desired to deposit his money where he would be paid interest he had better take it to a savings bank; and he replied that he would leave it there until he could get some other place to put it. The cashier assented to this, and told him he could have his money any time he wanted it. The testator went away apparently satisfied with that arrangement, and it is impossible to perceive how he could claim interest after that. Whatever the prior arrangement may have been, there was then a distinct agreement that he should leave his money without interest until he could get some other place to put it, and the prior arrangement, if one existed, was superseded. Under such circumstances we think there is no authority, and we know of no principle of law which would authorize the allowance of interest on the testator's account.

The case of *Read* v. *City of Buffalo* (74 N. Y. 463), relied upon by the plaintiffs, bears no analogy to this. There the defendant issued interest-bearing obligations, payable when the money should be collected or realized from taxes for local improvements, with interest, three months from date. The necessary funds for paying the obligations were collected, and subsequently the defendant's common council passed a resolution that after a certain date interest on the obligations should cease, and the treasurer published notices thereof in the official city papers; and it was held that that resolution and the published notices thereof did not stop the running of interest. There the defendant by its own acts, not communicated to the

plaintiff, claimed to have absolved itself from the payment of interest, and it was held that the notices published of the resolution of the common council did not affect the rights of the plaintiff in the absence of proof that such notices ever came to his knowledge. Here the testator was distinctly notified that interest would no longer be paid, and the money was really left in the bank under a new arrangement, distinctly understood by both parties that the account should not draw interest.

It may be true, as claimed by the plaintiffs, that if a bank should issue certificates of deposit bearing interest until paid, it could not stop the running of interest by a simple notice to the depositor that it would no longer pay it. But if it should say to him that it could no longer pay him interest, and request him to present his certificate and draw his money, the money being presently due, and say to him that if he left his money thereafter it would be without interest, and he, making no objection, should leave his money there, we know of no principle of law which would enable him to recover interest upon it.

We are, therefore, of opinion that upon the facts found by the referee the judgment should have been in favor of the defendant, dismissing the complaint.

But as there must be a new trial of the action, we ought further to notice some evidence given by the plaintiffs upon the trial, which the learned counsel for the defendant claims was erroneously received and considered by the referee. The plaintiffs were permitted to show that the testator had deposits in various other banks, upon which he was allowed interest, one bank being in New York, one in Little Falls, one in Syracuse, and another in Cortland. This evidence, as we understand it, was offered to show that the account with the defendant was an interest-bearing account. The testator's transactions with the other banks had no relation whatever with his transactions with the defendant, and it does not appear that the defendant had any knowledge whatever of them. His transactions with those banks were offered as independent

evidence to show that while he was receiving interest upon all his money deposited with other banks, it was wholly improbable that he would make deposits with the defendant without any interest, or that he would leave his money there without interest. While this evidence may be what is called moral evidence, more or less convincing, we are satisfied that it was illegal. The fact that he had contracts with other banks for interest, has no legal tendency to show that he had such a contract with this bank; and we know of no well-adjudicated case which holds such evidence under such circumstances to be competent. As a general rule it is inadmissible for the purpose of showing that A. did a particular thing at one time to prove that he did a similar thing at another time. Evidence must legitimately tend to prove the issues between the parties. In 1st Greenleaf's Evidence, section 52, it is said: "This rule excludes all evidence of *collateral facts*, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is that such evidence tends to draw away the minds of the jurors from the point in issue, and, to excite prejudice, and mislead them; and, moreover, the adverse party having had no notice of such a course of evidence, is not prepared to rebut it." If this evidence was competent then it would be difficult to limit the evidence which the plaintiffs could give of the conduct of their testator, although unknown to the defendant, showing that it was improbable that he would leave his money with the defendant, without interest; and the defendant might show that he did deposit money with other banks and loan money to individuals without interest, or even that he kept on hand large amounts of idle money, and it might show that other banks in the vicinity did not allow interest on open running accounts, and that it did not allow interest upon such accounts to other depositors; and thus many unexpected issues would be brought into the trial of the action, and the real issues be obscured and the minds of the jurors diverted therefrom and confused. Such evidence is too remote, inconclusive and uncertain in its bear-

ing; and evidence of a similar character was condemned in the following cases: *Carter* v. *Pryke* (Peake's Cases, 95); *Wood* v. *Poughkeepsie Ins. Co.* (32 N. Y. 619); *Green* v. *Diesbrow* (56 id. 334); *Carroll* v. *Deimel* (95 id. 252). Where one is charged with carelessness it would be incompetent to prove that he was habitually careless; or if charged with assault and battery that he was in the habit of committing assaults upon other people; and so many illustrations might be put showing that facts which constitute moral evidence, quite convincing, may yet be irrelevant when tested by legal rules.

We are, therefore, of opinion that the judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.