LOUIS LOWENSTEIN, Appellant, *v.* LOMBARD, AYRES & COMPANY,
Respondent.

1. APPEAL — ASSUMPTION AS TO THEORY OF RECOVERY. Where a plaintiff seeks to recover upon one of two theories, and the amount of the verdict depends upon which theory the jury finds to be in accord with the facts, their verdict for the plaintiff in one of the amounts is to be taken as establishing the theory which would entitle the plaintiff to that amount, and the questions to be decided upon appeal are those which depend upon that assumption.

2. PRINCIPAL AND AGENT — APPARENT AUTHORITY. A common carrier which is an undisclosed principal and holds out a person as its agent, to whom shippers may apply for rates of freight, thereby clothes him with apparent authority to include in a contract for shipment a provision, usual among carriers at the agent's port, for insurance against all loss without a declaration of the value of the goods although the agent had no authority to make the contract without such declaration, when the shipper has no notice of such limitation upon his authority.

3. NOTICE OF LIMITATION UPON AGENT'S AUTHORITY. Where two persons are held out as agents by an undisclosed common principal in language applying equally to both, the fact that one is an agent at the place where the carrier's main office is located while the other is at a distant and smaller place, is not sufficient to operate as a notice to shippers at the smaller place that the latter agent is subordinate to the former.

4. CARRIER'S CIRCULAR — WHEN NOT NOTICE. A statement on the carrier's circular, "insurance free when valuation declared before the sailing of the steamers," is not notice to an intending shipper that an agent appointed by it to make contracts for shipment has authority to insure only when the value of the shipment is so declared, since the announcement therein is not to be considered as the measure of the agent's authority in the absence of an express statement to that effect, but only as a general rule promulgated by the agent, which does not restrict him from departing from it in a special case.

5. EVIDENCE — SIMILAR CONTRACTS BY AGENT. In an action against the carrier where the defense is that its agent had no authority to make the contract without requiring a declaration of the value of the goods, evidence that the agent had made contracts with other parties, dispensing with such declaration, before and at the time of the alleged contract with plaintiff, is admissible as direct evidence for the purpose of defining the contract as actually made.

6. WHEN ORAL NEGOTIATIONS ARE NOT MERGED IN WRITTEN INSTRUMENT. Where a contract for shipment is made by an intending consignee with the carrier's agent in one place, and his consignor at another place, pursuant to the consignee's instructions, ships the goods at such other

place, the bill of lading given by the carrier to the consignor at the latter place does not constitute the contract between the carrier and consignee, and the rule that oral negotiations are merged in the written instrument has no application.

*Lowenstein* v. *Lombard, Ayres & Co.,* 17 App. Div. 408, reversed.

(Argued June 13, 1900; decided October 2, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, made May 7, 1897, reversing a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Horace E. Deming* for appellant. Middleton's powers as agent were co-extensive with the business and duties committed to his care. (*Goldwater* v. *L., L. & G. Ins. Co.,* 39 Hun, 176; 109 N. Y. 618.) Middleton as the local agent of a transportation company could make contracts binding upon the company even in direct contravention of the rules and instructions of the company. (*Pickford* v. *G. J. R. Co.,* 12 M. & W. 766; *Goodrich* v. *Thompson,* 44 N. Y. 324; *Pruitt* v. *H. & S. J. R. Co.,* 62 Mo. 527; *Deming* v. *G. T. R. Co.,* 48 N. H. 455; *Harrison* v. *M. P. R. Co.,* 74 Mo. 364; *Cross* v. *Graves,* 4 Tex. App. Cas. 100, 101.) Middleton's apparent authority being sufficient and complete, there was nothing in the testimony which could lead the plaintiff to suspect that his actual authority was limited or even to put the plaintiff upon inquiry. (*Hopkins* v. *Clark,* 7 App. Div. 207; *McNichol* v. *P. E. Co.,* 12 Mo. App. 401; *Barreda* v. *Pilsbee,* 21 How. [U. S.] 146; *Pearsall* v. *W. U. Tel. Co.,* 124 N.Y. 256.) Mere notice to the shipper of limitations is not sufficient; the assent of the shipper to the limitations must be shown. (*Pearsall* v. *W. U. T. Co.,* 124 N. Y. 256; *Hollister* v. *Nowlen,* 19 Wend. 234; *Cole* v. *Goodwin,* 19 Wend. 251; *Clark* v. *Faxton,* 21 Wend. 153; *C., etc., T. Co.* v. *Belknap,* 21 Wend. 354; *Blossom* v. *Dodd,* 43 N. Y. 264; *Coupland* v. *H. R.*

*R. Co.*, 61 Conn. 531; *Dixon* v. *W. U. T. Co.*, 3 App. Div. 60; *Gott* v. *Dinsmore*, 11 Mass. 45.) Testimony that under the line's usual contract the freight rate included insurance without previous declaration of value is relevant and material. (*Morrison* v. *Davis*, 20 Penn. St. 171; *Norris* v. *Fowler*, 87 N. C. 9; *N. W. Co.* v. *N. A. Co.*, 156 Mass. 331; *Buckley* v. *D. F. Co.*, 2 Conn. 252; *Lyon* v. *George*, 44 Md. 295; *L. & E. R. Co.* v. *Lyons*, 46 S. W. Rep. 209; Greenl. on Ev. [16th ed.] 59, § 14; *Outwater* v. *Nelson*, 20 Barb. 29; *Wigglesworth* v. *Dallison*, 1 Smith's L. C. 405.)

*Henry W. Goodrich* for respondent. The trial court erred in the admission of the evidence of other shippers. (*Bunten* v. *O. M. Ins. Co.*, 4 Bosw. 254; *Duryea* v. *Vosburgh*, 121 N. Y. 57; *Hollingham* v. *Head*, 4 C. B. [N. S.] 388; *Tallman* v. *Kimball*, 74 Hun, 279; *People* v. *Rector, etc.*, 19 Wend. 569; *Kirkpatrick* v. *N. Y. C. R. R. Co.*, 79 N. Y. 240; *Plato* v. *Reynolds*, 27 N. Y. 586; *Carpenter* v. *Ward*, 30 N. Y. 243; *Schell* v. *Plumb*, 55 N. Y. 592, 600; *Gandolfo* v. *Appleton*, 40 N. Y. 533.) Whether an agent be a general or special agent is immaterial where it appears that the person dealing with the agent had notice of the limitation imposed upon the agent's power. (2 Kent's Comm. [13th ed.] 620; *Mussey* v. *Beecher*, 3 Cush. 511; *Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5; *Chaffe* v. *Stubbs*, 37 La. Ann. 656; *Smith* v. *Tracy*, 36 N. Y. 79; *Bickford* v. *Menier*, 107 N. Y. 490; *Marvin* v. *U. L. Ins. Co.*, 85 N. Y. 278; *Freeman* v. *Buckingham*, 18 How. [U. S.] 182; *G. C. & S. F. Ry. Co.* v. *Brown*, 24 S. W. Rep. 918; *Stringham* v. *S. N. Ins. Co.*, 4 Abb. Ct. App. Dec. 315; *Grant* v. *Norway*, 10 C. B. 665.)

CULLEN, J. This action was brought by the plaintiff, as survivor of the firm of Wollner & Lowenstein, to recover the value of certain merchandise shipped from New York on the steamer *Vidette*, which was lost at sea. In the year 1887 the defendant was operating as a common carrier of goods and persons a line of steamships, which included the *Vidette*,

between the cities of New York and Mobile. The defendant's principal business was the refining of petroleum, and the primary purpose of the maintenance of its steamship line was the transportation of its own lumber and staves from the South to New York. The steamships were run and operated under the name of "New York and Mobile Steamship Company," or "New York and Mobile Steamship Line." The connection of the defendant with the line was in no way advertised or made known to the public. All the bills of lading, receipts and blank stationery used in connection with the business merely bore one of the two names above recited, and underneath such title the words, "Agents, William J. Best, 12 Broadway, New York; Robert Middleton, Mobile, Alabama." There was some difference in the various forms in their references to the agencies of the line. Some of the circulars and blanks issued at New York contained only the statement that Best was the agent in New York, without referring to Middleton's position in Mobile. Others gave both Best and Middleton as agents. The advertisement of the line in Mobile mentioned the agency of Middleton in Mobile first, and then the agency of Best in New York. On other papers the name of Best seems to have generally preceded that of Middleton, but there was nothing in advertisements, circulars, bills of lading or other forms to show that the rank and authority of Best and Middleton were not the same. The plaintiff sought to recover on two distinct grounds. The first was an oral agreement made in Mobile with the defendant's agent Middleton, whereby the defendant, in consideration of the freight money, agreed to insure the merchandise shipped against all loss or damage during transit to the amount of the invoice price, with ten per cent added. The second count was for breach of the contract of transportation, in that the steamer was unseaworthy. The defendant answered, admitting the shipment of the goods, but denying the contract of insurance, and also alleging that the goods were lost by peril of the sea, without fault on its part. The case was submitted to the jury on both issues, the contract of

insurance and the unseaworthiness of the vessel, with instructions that if the jury found for the plaintiff on the first issue the verdict should be for the invoice price of the goods, with ten per cent added; while if they found for the plaintiff on the second issue only, there should be deducted from such sum the amount of the freight money. The jury rendered a verdict for the plaintiff for the full amount. The defendant moved for a new trial, which motion was denied. On appeal the Appellate Division reversed the judgment and order, and granted a new trial "upon questions of law only, the court having examined the facts and found no error therein."

From the amount of the verdict, the learned court below assumed, we think correctly, that the plaintiff's recovery was based on the contract for insurance. It reversed the judgment on the ground that Middleton had no power to bind the defendant by the alleged contract of insurance, and because of the admission of improper evidence. As to the actual authority of Middleton, the evidence showed that he was appointed agent in Mobile by one Havens, the secretary of the defendant, who had a general supervision of the line and that he was subject to the instructions of the New York agent, Best, who managed and directed the details of the business. It appeared that Middleton was authorized to insure goods shipped, but only when the value of the goods was declared before the sailing of the steamer. In this case the value of the goods was not declared, the contention of the plaintiff being that under the contract with Middleton he was not required to declare it. It must be conceded, therefore, that under the proof Middleton was not authorized to make the contract sued upon. But if he in fact made that contract the liability of the defendant depends, not on the actual authority of Middleton, but on his apparent authority on which the plaintiff was entitled to rely in dealing with him.

Middleton was not the universal agent or *alter ego* of the defendant, but as to the business confided to him he was a general agent. The circulars and notices directed persons interested to "for rates of freight or passage apply to R. Mid-

dleton, agent, Mobile; W. J. Best, agent, No. 12 Broadway, New York." The general rule is, " where an entire business is placed under the management of an agent, the authority of the agent may be presumed to be commensurate with the necessities of the situation." (Huffcut on Agency, p. 112, sec. 107.) " The powers of the agent are, *prima facie,* co-extensive with the business entrusted to his care and will not be narrowed by limitations not communicated to the person with whom he deals." (*Ins. Co.* v. *Wilkinson,* 13 Wallace, 222; approved, *Pechner* v. *Phœnix Ins. Co.,* 65 N. Y. 207.) The evidence shows that the other transportation lines doing business between Mobile and New York gave free insurance without requiring declaration of value to shippers of freight over those lines and had done so for a long period. " Where the principal confers upon his agent an authority of a kind, or empowers him to transact business of a nature, in reference to which there is a well-defined and publicly known usage, it is the presumption of law, in the absence of anything to indicate a contrary intent, that the authority was conferred in contemplation of the usage, and third persons, therefore, who deal with the agent in good faith and in the exercise of reasonable prudence, will be protected against limitations upon the usual authority, of which they had no notice." (Meechem on Agency, sec. 281.) In *Ellis* v. *Albany City Fire Insurance Company* (50 N. Y. 402) it was said: " The question in this case is whether this authorized McCoy to make a contract binding upon the defendant for the issue of a policy of insurance. In determining this question the prevailing usage of transacting such business must be regarded, as it is an elementary principle that the delegation of an authority to transact any business includes an authority to transact it in the usual way, and to do the acts usual in its accomplishment." Speaking of the authority of a baggage master of a railroad company, Judge ANDREWS said in *Isaacson* v. *N. Y. C. & H. R. R. R. Co.* (94 N. Y. 278): " But the authority of an agent may be implied in many cases from his official designation, the position in which he is placed, and the duties which

42

naturally appertain thereto. Parties may deal with the agents of corporations upon the presumption that they possess the powers usually assigned to the office they hold, and the principal is bound as to third persons acting in good faith, by the act of an agent within his apparent authority, although in the particular instance it was unauthorized." (See, also, *Talcott* v. *Wabash R. R. Co.*, 159 N. Y. 461; *Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 162 N. Y. 84.) The implied authority of an agent in the absence of notice to the contrary is the measure of his apparent authority. It is clear that in Mobile (if not generally, of which there is no evidence to the contrary), where the agent was to transact his business, stipulations as to insurance were part of the ordinary terms for the shipment of freight. In addition to this Middleton was expressly authorized to grant insurance subject to the qualification that the value of the goods should be declared in advance. We think, therefore, that Middleton had the apparent power to make the agreement sued upon unless the plaintiff had notice of limitation placed on that authority by the principal.

We do not know that the proposition last asserted is gainsaid either by the court below or by the learned counsel for the respondent; but it is contended that the plaintiff was notified that Middleton could only insure when the value of the shipment was declared. This presents the real question which arises in this branch of the case. It appears that on the circulars issued by the line there was printed the statement, " Insurance free when valuation declared before the sailing of steamer." A similar statement appeared on the printed slips which contained the dates of the sailing of the steamers and in the advertisement published in the Mobile papers " Insurance effected on open policy of line before sailing of steamer free." The plaintiff denies having seen these slips, though it seems one of them was inclosed in a letter from his bookkeeper to the firm in Boston who shipped the goods lost. If we assume, however, that the plaintiff had seen these circulars, did they notify him of any limitation on the power of Middleton to

contract for insurance? We think not. It is here that the
form of the notices, bills of lading and advertisements becomes
very material. As already stated, the connection of the
defendant with this line or steamship company, and that it
was the principal of whom Best and Middleton were the
agents, was not known to the public. The defendant was an
undisclosed principal. As far as the public were aware, Mid-
dleton and Best had equal authority and no superior was
named. Because New York is a very great city and Mobile a
comparatively small city, there was no presumption that Best
was the superior of Middleton nor that in New York was the
home office of the owners of the line in preference to Mobile.
In case of question as to Middleton's authority there was
no superior given of whom inquiry could be made as to its
extent. The notice that insurance was free when the value of
the goods was declared before sailing was signed either by
Best as agent, or by Best and Middleton as agents. The fair
import of this notice was not that the principals had limited
the authority of either Middleton or Best in the matter of
insurance, but that it was a rule formulated or promulgated
by the agents themselves under their authority as agents as
the terms on which they sought business. Being such, it was
apparently as much within the power of the agent to dispense
with it as it was to have formulated it in the first instance.
The notice seems to us in all respects similar to a notice that
goods will not be received after a specified hour on the day
when the ship is to sail, or that merchandise will be carried
only when packed in a prescribed manner. These provisions
all relate to the details of the business presumably fixed by
the agent for its conduct, not by the principal as a limita-
tion of the power of the agent. Steamship companies as a
practice advertise their rates of fare, but it is well known
that, especially in dull times, abatements in price are made.
Indeed, it was recently argued in this court, in support of
the validity of a statute forbidding the sale of railroad tickets
except by specially authorized agents, that without such
a law it was impossible to keep railroad companies from

cutting the rates of fare agreed upon with competing lines. (*People ex rel. Tyroler* v. *Warden of Prison*, 157 N. Y. 116.) The case is in no respect analogous to that of an insurance policy in which are found express provisions that agents are not authorized to modify its terms except by indorsements in writing. Had the notice in this case been issued by the defendant itself or been signed by Best as general manager, it might be argued that the local agents were not authorized to alter its terms; but since, so far as the notice is concerned, the regulation seems to have emanated only from Best and Middleton as agents or Best alone, of whom Middleton was apparently the equal, parties dealing with them were justified in assuming that Middleton or Best might at any time dispense with the condition prescribed in the notice. This case differs materially from that of *Leinkauf* v. *Lombard, Ayers & Co.* (12 App. Div. 302). It appears by the report of that case that the shipper had in the course of business with Middleton, learned that the latter's authority was limited, and that he could act only under directions from the superior officer or agent in New York. In this case nothing of the kind appears. Middleton came to the plaintiff and his partner and solicited their business for the line of which he was the agent. He did not assume to make any extraordinary or exceptional contracts with them. He represented that his line was doing business on exactly the same terms as to insurance and freight as the other transportation lines to Mobile. The plaintiff, therefore, had no reason to question his authority to make the contract, it being one in the ordinary conduct of the business. We are of opinion, therefore, that the contract of Middleton bound the defendant.

We think it was proper to admit evidence of contracts made by Middleton with other parties before and at the time of the alleged contract with the plaintiff, in which any requirement that the value of the goods should be declared before shipment was dispensed with. Middleton denied making these contracts. We assume that the evidence was not admissible for the purpose of impeaching Middleton nor for the purpose

of inferring that because Middleton had made an agreement of a certain character with one party it was probable he made a similar agreement with the plaintiff. (*McLoghlin* v. *Nat. Mohawk V. Bank,* 139 N. Y. 514.) It was competent, however, as direct evidence for the purpose of defining the contract that was actually made. The plaintiff testified that in the conversation between Middleton and his partner, in pursuance of which the shipment of the lost goods was directed, Middleton said that his line was doing business on the same terms as the others; that the freight rate included insurance of the goods, and that nothing was said as to any condition of requirement that the value of the goods should be declared in advance of shipment. Middleton testified that the conversation was a general one, but that he stated the necessity of declaring the value of the goods to secure the insurance. This last statement the plaintiff denies. Middleton also testified that afterwards he sent to the plaintiff's office the printed notice of sailing of the steamers, which contained the provision as to declaring the value of the goods in advance. The contract between the parties was not in writing but oral. It is true that if the jury found that the shipment was to be on exactly the same terms and conditions as those required by other lines the testimony admitted would have been unnecessary, because the fact was proved beyond dispute that those lines required no declaration of value in advance. But the jury might not so find. It might accept part of the plaintiff's testimony and reject the remainder. On the evidence (which it is unnecessary to recite in detail), it might find that the contract was to carry plaintiff's goods and insure them subject to the conditions and provisions required by the defendant in the ordinary conduct of its business at the time. It was, therefore, material and relevant to show that the defendant was at the time conducting its business not in accordance with the terms of the printed notice, but without requiring declaration of value in advance of shipment.

It is contended for the respondent that the trial court erred in refusing to charge that under the bill of lading the plaintiff

could, under no circumstances, recover any more than the value of the goods at the place of shipment. This request in any aspect of the case was too broad and properly refused because it ignored the fact that the jury might find the contract of insurance alleged. If the jury found the contract testified to by the plaintiff to have been made in Mobile between his firm and the defendant's agents, the bill of lading given at Boston when the plaintiff's consignor in pursuance of his instructions shipped the goods, did not constitute the contract between the parties and the rule that oral negotiations are merged in the written instruments has no application. Nor was the request correct in case of a recovery on the second cause of action, the unseaworthiness of the vessel, though as already stated the amount of the verdict shows that the recovery was on the first count. The measure of damages of breach of a contract of transportation was the value of the goods at the place of delivery. (*Sturgess* v. *Bissell*, 46 N. Y. 462.) This value was proved to be the invoice price with ten per cent added. The bill of lading provides that all liability under it "shall be estimated on the basis of the actual market value of the goods at the place and time of shipment." This provision for limitation of liability is not broad enough to relieve the carrier where the loss has occurred through its negligence or that of its servants. (*Magnin* v. *Dinsmore*, 56 N. Y. 168. See cases there cited.) We have not discussed separately the several exceptions to the charge of the learned trial court, or to each refusal to charge. They are numerous, but are all disposed of by the views we have expressed.

The judgment of the Appellate Division should be reversed and the judgment entered on the verdict at Trial Term should be affirmed, with costs.

O'BRIEN, BARTLETT, HAIGHT, VANN and LANDON, JJ., concur; PARKER, Ch. J., not sitting.

Judgment reversed, etc.