MERCHANTS' NATIONAL BANK OF GARDINER *vs.* CITIZENS'
GAS LIGHT COMPANY OF QUINCY & another.

Norfolk.   January 10, 11, 1893. — October 19, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Promissory Note — Gas Company — Statute — Corporation — Authority of
Treasurer to sign Note — Defence.*

The St. of 1886, c. 346, relating to gas companies, does not affect the right of such
a company to issue promissory notes.

It is not necessary that the authority of an officer of a corporation to sign promis-
sory notes in its behalf should appear in its by-laws, or should have been
expressly given by a vote of its directors or stockholders.

The treasurer of a gas light company has, by virtue of his office, authority to sign a
promissory note which shall bind the corporation.   FIELD, C. J. & ALLEN, J.
dissenting.

In an action upon a promissory note signed in the name of a corporation by its
treasurer, the corporation cannot contend, in defence of the action, that the act
of the treasurer, who, under color of an election to the office, had, without pro-
test or opposition from any source, acted as such officer for a period of three
months before making the note, was invalid, because the annual meeting at
which he was chosen was not called in accordance with the by-laws.

CONTRACT, against the Citizens' Gas Light Company and
Charles S. J. Ruggles, upon a promissory note for $685, dated
April 15, 1891, payable two months after date to the order
of C. S. J. Ruggles, Treasurer, signed " Citizens' Gas Lt. Co.,
C. S. J. Ruggles, Treas.," and indorsed in the same manner as
signed, and also by Ruggles personally.   At the trial in the Su-
perior Court, before *Dunbar*, J., the jury returned a verdict for
the plaintiff; and the defendant corporation alleged exceptions,
which appear in the opinion.

The case was argued at the bar in January, 1893, and after-
wards was submitted on the briefs to all the judges.

*W. L. Putnam*, for the defendant corporation.

*H. R. Bailey*, for the plaintiff.

BARKER, J.   1. The defendant corporation's first request for
instructions relates to the effect of St. 1886, c. 346, upon the
powers of that corporation to issue promissory notes.   The third
section of that statute relates to the issue of bonds by a gas

company, and gives a company the right to secure bonds issued in accordance with the provisions of the section by a mortgage of the franchise and property of the company; but we find nothing in the chapter which affects the right of such a company to issue promissory notes when convenient or necessary in the prosecution of its business.

2. As the plaintiff discounted this note before maturity " in the usual course of its business, without notice or knowledge of any defect or infirmity," and as its good faith is not questioned, if the note were signed by an officer authorized generally to give notes in its behalf the defendant corporation would be liable, although the agent in signing this particular note exceeded his authority, or the powers of the corporation. *Monument National Bank* v. *Globe Works*, 101 Mass. 57. It is not necessary that the authority of an officer or agent to sign notes in behalf of a corporation should appear in the by-laws, or should have been expressly given by a vote of the directors or of the stockholders. In *Lester* v. *Webb*, 1 Allen, 34, it was said : " The rule is well settled, that if a corporation permit their treasurer to act as their general fiscal agent, and hold him out to the public as having the general authority implied from his official name and character, and by their silence and acquiescence suffer him to draw and accept drafts, and to indorse notes payable to the corporation, they are bound by his acts done within the scope of such implied authority. *Fay* v. *Noble*, 12 Cush. 1. *Williams* v. *Cheney*, 3 Gray, 215. *Conover* v. *Mutual Ins. Co.* 1 Comst. 290. On the facts proved at the trial, the plaintiff might well claim, if the jury believed the evidence, that the treasurer had authority to indorse the notes in suit, derived not from any express direction, but from the course of conduct and dealing of the treasurer with the knowledge and implied assent of the directors of the corporation." See also *McNeil* v. *Boston Chamber of Commerce*, 154 Mass. 277, 285 ; *Mining Co.* v. *Anglo-Californian Bank*, 104 U. S. 192.

3. But cases where the actual authority of an officer is inferred from a course of business known to and permitted by the stockholders or the directors of a corporation, do not touch the question whether authority is to be implied, as matter of law, from the name and nature of the office itself. In the present

case the jury were instructed that the treasurer of such a corporation as the defendant company has, by virtue of his office, authority to sign a note which shall bind the corporation, and the defendant contends that this instruction was incorrect.

The incidental powers of some officers or agents have become so well known and defined, and have been so frequently recognized by courts of justice, that certain powers are implied as matters of law in favor of third persons who deal with them on the assumption that they possess these powers, unless such persons are informed to the contrary. The officers and agents usually mentioned in this category are auctioneers, brokers, factors, cashiers of banks, and masters of ships. See *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Case* v. *Bank*, 100 U. S. 446.

Treasurers of towns or cities in this Commonwealth are well known officers, and their powers are very limited. They are in general to receive, keep, and pay out money on the warrant of the proper officers of the towns and cities. Treasurers of business corporations usually have much more extensive powers, and the decisions of this court hold that the treasurer of a manufacturing and trading corporation is clothed by virtue of his office with power to act for the corporation in making, accepting, indorsing, issuing, and negotiating promissory notes and bills of exchange, and that such negotiable paper in the hands of an innocent holder for value, who has taken it without notice of any want of authority on the part of the treasurer, is binding on the corporation, although with reference to the corporation it is accommodation paper. *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 282. *Bates* v. *Keith Iron Co.* 7 Met. 224. *Fay* v. *Noble*, 12 Cush. 1. *Lester* v. *Webb*, 1 Allen, 34. *Lowell Five Cents Savings Bank* v. *Winchester*, 8 Allen, 109. *Bird* v. *Daggett*, 97 Mass. 494. *Monument National Bank* v. *Globe Works*, *ubi supra*. *Corcoran* v. *Snow Cattle Co.* 151 Mass. 74. While it is possible that most, if not all, of the cases in which this rule has been stated as law have some special circumstances from which the treasurer's authority could be inferred, and that the court was influenced in the decisions by the well known fact that in many of the manufacturing corporations of this Commonwealth the treasurer not only has the custody of the money, but is the general financial manager and often the general

business manager of the corporation, the rule itself has been frequently and broadly stated in our decisions, and is well known both to the officers of manufacturing and trading corporations and to those of banks and financial institutions. It could not now be abrogated or unsettled without disturbing commercial transactions. There are, however, many corporations which do more or less business to which the rule has been held not to apply. Thus it does not apply to a college: *Webber* v. *Williams College*, 23 Pick. 302; nor to a parish: *Packard* v. *First Universalist Society in Quincy*, 10 Met. 427 ; nor to a monument association : *Torrey* v. *Dustin Monument Association*, 5 Allen, 327 ; nor to a municipality : *Lowell Five Cents Savings Bank* v. *Winchester*, 8 Allen, 109; nor to a savings bank : *Tappan* v. *Warren Five Cents Savings Bank*, 127 Mass. 107 ; nor to a horse railroad company : *Craft* v. *South Boston Railroad*, 150 Mass. 207.

Upon consideration of the decisions cited, we think it fair to say that the making and indorsing of negotiable paper is to be presumed to be within the power of the treasurer of a manufacturing and trading corporation, whenever, from the nature of its ordinary business as usually conducted, the corporation is naturally to be expected to use its credit in carrying on commercial transactions. Such paper is the usual and ordinary instrument of utilizing credit in commercial dealings, and it is for. the interest of the corporation and of the community that the best instrument should be employed. It is no less for the interest of all, that, if negotiable paper is to be employed, its validity should not be open to objections which would impair its usefulness by requiring at every step an inquiry into the authority by which it is issued.

There are matters of common knowledge pertinent to the present question. Gas light companies like the defendant are chartered for the purpose of making and selling gas. They are located in every city of the Commonwealth, and in most of the larger towns and villages. In the recent development of the use of electricity many electric light or light and power companies have been established where gas light companies are in operation. The powers, obligations, and business of these electric companies are so similar to those of gas light companies, that they are classed with them in the minds of business men, and are under

the supervision of the same State board. We see no reason why, in respect to the present question, all of this general class of corporations should not be governed by one rule. They are all in fact "manufacturing and trading corporations," in the same sense that companies whose business it is to manufacture and sell cottons, woollens, shoes, or paper are manufacturing and trading corporations. None of these companies are traders in the strict sense contended for by the defendant, since none of them make it their "business to buy merchandise or goods and sell the same." All of them, and the gas light companies equally with the others named, buy merchandise and goods in large amounts, expend large sums in transforming by their processes of manufacture the articles purchased into other commodities which they sell for the purpose of making a profit. Neither the fact that the pipes which a gas light company uses to deliver to its customers one of the commodities which it sells are laid under public authority, nor that the price of gas may be regulated by such authority, nor that the municipality in which its plant is located may purchase or take its franchise and property, makes it less advantageous or necessary that the gas light company shall be able to use its credit in its commercial dealings. Although such companies manufacture only as they deliver, and so have no occasion to hold large quantities of manufactured goods for a market, there are features of their business which make it necessary for them to have control of large amounts of money at certain seasons. Coal, their chief raw material, is uniformly at its lowest price in the summer, and away from the seaboard is usually taken in in large quantities at that season. Gas is uniformly sold upon time, and the bills collected monthly or quarterly. The work of extending and repairing street mains and other work upon the manufacturing plant can be done to the best advantage during only a portion of the year. A business so conducted affords abundant scope for the advantageous use of the credit of the corporations engaged in it, and they would naturally be expected to use their credit in the transaction of their ordinary business. Their published returns made to the Board of Gas Commissioners show that the companies do in fact issue large amounts of promissory notes. It is true that these notes may possibly have been issued under special votes or by-laws, or other ex-

plicit authority.  Upon this point we have no evidence or means of certain knowledge.  But it is also true, and is a consideration entitled to weight, that the practice of gas light companies to issue promissory notes has grown up since the announcement by the court of the rule that treasurers of manufacturing and trading corporations are presumed to have authority to issue such notes ; and again, that gas light companies are in fact manufacturing and trading corporations.  The strong inference is that the gas light companies and their officers, and those who have received in payment, or bought, or discounted their promissory notes, have in so doing acted upon the assumption that the rule as to the implied authority of treasurers of manufacturing and trading corporations to issue negotiable paper applied to the treasurers of gas light companies.  Those who have occasion to deal directly with such companies, or to purchase or discount their notes in the money market, would naturally assume that the rule so long applied by the court to other manufacturing and trading corporations would be applied to these.  In our opinion, the same reasons which required the making of the rule referred to are operative here, and require us to hold that it is to be applied in the case of gas light companies.  We do not disregard the fact that such companies have peculiar duties to the public, and peculiar privileges, and that their operations may be regulated by public authority and their franchises and property taken over by the municipalities in which their works are located. But the situation of such a company with reference to this class of rights and obligations is the same, irrespective of the question whether its treasurer is or is not to be presumed to have power by virtue of his office to issue promissory notes.  Such notes do not bind the franchises or the property of the company any more than debts upon open account.  A majority of the court is therefore of opinion that the jury was rightly instructed that the treasurer of the defendant corporation, by virtue of his office, had authority to sign a note which would bind the corporation.

4. It is not necessary to consider in detail the numerous questions argued by the defendant corporation as to the admission and the exclusion of evidence, and the rulings given and refused, bearing upon the status of Ruggles as the treasurer *de jure* or *de facto* of the corporation, or upon the answers to the special questions

propounded by the court and answered by the jury in addition to the general verdict for the plaintiff.   Upon the uncontroverted evidence certain persons claiming to act as the stockholders of the corporation, all of whom were interested in its stock, assembled at its office on the day fixed in its by-laws as the date of its annual stockholders' meeting, and went through the forms of holding its annual meeting and of electing him treasurer of the company.   The former incumbent of the office resigned it into the hands of Ruggles, and he has since filled the position of treasurer under a claim of a right to the office, and without dispute on the part of any stockholder or member of the corporation, and no proceedings have been brought by the corporation itself to test his title to the office.   The note in suit was issued when he had thus been in the unquestioned discharge of the functions of the office for nearly three months, and immediately thereafter at a meeting of which public notice was given his election was ratified and confirmed.   No person in any way interested in the stock, either as a stockholder of record or as a purchaser or pledgee of untransferred certificates, has contested in any way his right to the office.   The contention that he is not the lawfully elected treasurer has been made only by the corporation itself, and only as a technical defence to the present suit. Whatever might be the rule to be applied if a stockholder or member of the corporation, or the corporation itself, had contested the right of Ruggles in proceedings brought to test the validity of his original election, or of the subsequent ratification, and without holding that the rules which apply to *de facto* officers of government or of public or quasi public corporations, we are of opinion that under such circumstances the corporation itself cannot be permitted to contend, in defence of an action like the present, that the acts of a person who, under color of an election to the office, has, without protest or opposition from any source, acted as its treasurer for so long a time, are invalid, merely because the annual meeting at which he was chosen was not called in accordance with the by-laws.   None of the exceptions relating to this branch of the case are, in view of the uncontroverted facts, material to the question whether the note in suit is a valid cause of action against the corporation, and they are overruled as immaterial.                              *Exceptions overruled.*

FIELD, C. J.    The most important question in this case is whether the instruction of the court is correct, that the treasurer of such a corporation as the defendant has authority to sign a promissory note for the corporation by virtue of his office, although the by-laws confer no such authority on him, and he has not been held out by either the stockholders or the directors of the corporation as having any such authority, and has not been knowingly permitted to exercise any such power. The ground on which certain officers and agents are held, as matter of law, to possess certain implied powers by virtue of the office or employment is, that by a well known general usage certain powers attach to the office or employment, and the appointment is presumed to have been made with reference to this usage, unless there is notice or knowledge to the contrary.

The grounds on which this court has decided that the treasurer of a manufacturing and trading corporation must be taken to have authority to sign promissory notes in behalf of the corporation, unless there is notice or knowledge to the contrary, are stated in the opinion of the majority of the court, but these decisions have been confined to corporations which sell merchandise in the market, although they manufacture the merchandise which they sell, and the doctrine has never been extended to such quasi public corporations as gas light companies.    In a street railway corporation, which perhaps affords the nearest analogy, an implied power in the treasurer to sign promissory notes for the corporation has been denied, and treasurers of municipal corporations, and of corporations generally, have no such implied power.

Gas light companies are not commonly known as trading companies.    They do not sell goods, wares, and merchandise in the market.    Indeed, they are not commonly called manufacturing companies.    They manufacture and deliver gas to the inhabitants of defined localities, at prices fixed either by public authority or by the companies themselves, subject to public supervision. They may be invested with the right of eminent domain and subjected to municipal control, and the business may be carried on by towns and cities as well as by private corporations.    Their property is mainly in real estate; the income is received at regular times, and, although small in proportion to the value of the

plant, is not subject to unforeseen variations in kind or amount. These companies may issue bonds at not less than par, but, unless specially authorized by the Legislature, the amount of bonds must not exceed the capital actually paid in; St. 1886, c. 346, § 3; and the property which constitutes the plant is or should be paid for from the money received in payment for the capital stock and from the proceeds of the bonds. Such companies may sometimes have occasion to borrow money and to give promissory notes, but, if well conducted, the occasions cannot be frequent. The word " treasurer " in and of itself does not import that the person holding that office is the general business manager of the corporation, but only that he is the person to receive, keep, and disburse the money of the corporation. It was not shown in the present case that treasurers of similar corporations customarily exercise the power of giving promissory notes in behalf of the corporations. Such a power may be given by the by-laws to a treasurer, either alone or jointly with some other officer or officers, but in this case the defendant offered to show that by the by-laws the treasurer " had no power as treasurer to sign notes on behalf of the company," and this evidence was excluded. I know of no custom or usage of which we can judicially take notice showing that treasurers of such corporations generally have such an authority or generally exercise such a power. I know of no principle of public policy which requires us to hold that the treasurer of such a corporation has impliedly such a power, when he in fact has it not, and has not been held out by the corporation or its directors as having it, and when it does not appear that treasurers of similar corporations have customarily exercised such a power so publicly and uniformly that courts can take judicial notice of it. It is important that corporations should retain the power of controlling their officers. The general rule is, that, when one person signs the name of another to any contract, whether the other be a natural or artificial person, the authority to do so should be shown, unless the principal has held out such person as having such authority. The instances must be rare when the law will necessarily imply, from the name of an office in a corporation, authority to sign the name of the corporation to any contract, when no such authority has in fact been given, or has ever

before been exercised with the knowledge of the stockholders or directors of the corporation. There is, generally speaking, no hardship in compelling persons who take promissory notes signed by one person in the name of another to ascertain the authority of the person signing, unless they are content to rely upon an indorser or guarantor. I think the instruction given on this subject was wrong.

Mr. Justice Allen concurs in this opinion.