KERVIN R. DUNTON *vs.* DERBY DESK COMPANY.

Suffolk.    January 27, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Corporation*, Authority of officers.  *Agency.*  *Contract*, What constitutes.  *Evidence*, Remoteness.

Whether the general manager of a manufacturing corporation had authority to employ a superintendent of the corporation's factory, properly may be treated as a question of fact.

In an action against a manufacturing corporation by a superintendent of its factory for alleged breach of contract in discharging the plaintiff from its employ, it appeared, that the plaintiff worked for the defendant as superintendent for one year at a salary of $3,500 a year and in the following year, in which he alleged that the defendant again employed him, he continued to work as superintendent for about seven months and was paid at the same rate up to the time of his discharge.  *Held,* that this was evidence of some contract express or implied on the part of the defendant to employ the plaintiff as superintendent in the second year, and that the fact that the employment was continuous had an important bearing on the matter.

In an action against a manufacturing corporation by a superintendent of its factory for alleged breach of contract in discharging the plaintiff during a second year after he already had been employed as superintendent at a certain salary for one year, if the presiding judge correctly instructs the jury that the plaintiff, to prevail, must prove that both parties must have understood that there was a contract for the second year, it does not matter that he also gives other instructions as to what the plaintiff had the right to understand, especially where these instructions also are correct.

In an action against a manufacturing corporation by a superintendent of its factory for alleged breach of contract in discharging the plaintiff, where the defendant contended that the discharge was justified because the plaintiff had neglected or wilfully failed to perform the duties for which he was employed, there was evidence that the plaintiff while superintendent had full charge of the operation of the defendant's factory and that the factory was equipped sufficiently for properly furnishing the goods required in the defendant's business.  The defendant offered to show that during a period of six months before the plaintiff's discharge there was a loss of about $20,000 in the business and that the general manager, from an investigation made on his return from Europe during the period in question, would testify that the cause of the loss was largely the result of not properly furnishing the goods for the business and that it was traceable to the factory.  The evidence was excluded.  *Held,* that the exclusion was right, the plaintiff's neglect or wilful failure to perform his duties, if a fact, being susceptible of direct proof, and the loss or profit of a manufacturing company being dependent on so many conditions as to have no necessary bearing on the conduct of the superintendent.

LATHROP, J. This is an action to recover the balance due on an alleged contract to employ the plaintiff as superintendent of the defendant's factory, for the term of one year from July 1, 1900, to July 1, 1901, at the rate of $3,500 a year. In the Superior Court the jury returned a verdict for the plaintiff; and the case is before us on the defendant's exceptions.

The plaintiff testified, without objection, that in July, 1899, he went to see one Pond, a director and the general manager for the defendant, to find out what agreement was to be made for the year already entered upon, the business year of the defendant ending on June 30; that he told Pond that he ought to be worth $3,500, and Pond said he would see one Swift, the president of the company, who was also a director; that some time later Pond told him he had seen Swift and Swift said he was willing to pay any salary the plaintiff requested; that he named $3,500, and Pond said it was all right. No question appears to have been made that for the business year ending June 30, 1900, the plaintiff was paid at this rate.

The plaintiff further testified that nothing further was said until about the middle of August, when Pond was going to Europe to be gone six or eight weeks, when he saw Pond again, and asked him about an arrangement for the year beginning July 1, 1900, and proposed that he be paid $4,000; that Pond said he would take up the matter with Swift; that later Pond told the plaintiff that Swift did not want to make any change in the salaries, and wished him to continue the same as last year; and that the plaintiff acquiesced.

Pond admitted the arrangement for the year beginning July 1, 1899, but denied that any arrangement was made for the following year, and testified that after June 30, 1900, the plaintiff came to him and asked him what arrangement could be made for another year, and that he told him he would see the directors about it; that after seeing the directors, he told the plaintiff that "we could not make any further arrangement."

The only other witness was Swift, who testified that the matter was brought before the board of directors in July, 1899, and again in 1900, and that in that year Pond was forbidden by the board of directors to make any contract whatever; and that it had not been their custom to make minutes of a meeting for considering the matters of salaries.

It appears from the bill of exceptions that the plaintiff continued to act as superintendent until January 21, 1901, when he was discharged, and paid up to February 1, following. There were but three directors in the company.

At the close of the evidence the defendant requested the judge to order a verdict for the defendant, on the ground that there was no evidence that Pond was authorized to make the contract declared on, and no evidence that the contract was made by or with the defendant corporation. The judge refused to give this instruction, and submitted the case to the jury.

As to the first ground of objection, it is enough to say that the judge instructed the jury that, as matter of law, "Pond had no authority by virtue of the fact that he was the general manager to make a contract." This was sufficiently favorable to the defendant, and perhaps too favorable. The question of the authority of a general manager may be a question of fact. In some corporations it often happens that the whole power of making contracts for the employment of subordinate officers and men is left practically with the general manager; and so he may make a contract which is incidental to something which he is authorized to do. *Henderson* v. *Raymond Syndicate*, 183 Mass. 443, 446.

The second ground of objection is that there was no evidence that the contract was made by or with the defendant corporation. We are of opinion that this objection is not tenable. It is admitted that a contract existed for the previous year at a fixed sum. It is also admitted that the plaintiff continued to work in the same capacity until he was discharged, and was paid the same wages he had previously received. There was therefore some contract express or implied. What this was, was a question for the jury on all the evidence in the case, and the fact that the service was continuous had an important bearing on the case. *Tatterson* v. *Suffolk Manuf. Co.* 106 Mass. 56. See also *Davis* v. *Ames Manuf. Co.* 177 Mass. 54; *O'Connor* v. *Briggs*, 182 Mass. 387.

The second and third exceptions are the same as the first in a slightly different form, and are disposed of by what we have already said.

The fourth exception relates to the following portion of the charge: "The plaintiff says that in the previous year there was a contract made by the directors and reported to him by Mr.

Pond, and that he, the plaintiff, understood that this year the situation was the same. . . . Now all I meant to say by that was that it was evidence to him to justify him in supposing that Pond was reporting from the directors this year as he had in the year previous, and that as when in the year previous Pond spoke the directors spoke, so this year he had a right to infer that when Pond spoke the directors spoke."

We see no error in this; nor do we think that the matter is of any importance. In other parts of the charge the jury were fully instructed as to what the plaintiff must prove before he could prevail, namely, that both parties must have understood that there was a contract for the second year. In the part excepted to the judge was dealing only with one element of the contract, namely, what the plaintiff had the right to understand.

The last exception relates to the exclusion of evidence. The defendant contended that it was justified in discharging the plaintiff, even if a valid agreement was made for a year's service in August, 1900, because the plaintiff had neglected or wilfully failed in material respects to perform the duties for which he was employed. There was evidence that the plaintiff had full charge of the operation of the defendant's factory while he was superintendent thereof, and that said factory was sufficiently equipped in all respects for properly furnishing the goods required for the defendant's business.

The defendant offered to show that there was a loss of about $20,000 in the business from the first of July, 1900, to the first of January, 1901, and that from investigation made after Pond's return from Europe in November, 1900, he would testify that the cause of that loss was largely the result of not properly furnishing the goods for the business, and it was traceable to the factory.

We are of opinion that the evidence offered was properly excluded. If the plaintiff had neglected or wilfully failed to perform his duties this was susceptible of direct proof, and the loss or profit of a manufacturing company is dependent upon so many conditions that there is no necessary connection between them and the conduct of the superintendent.

*Exceptions overruled.*

*F. Hutchinson & A. S. Hutchinson,* for the defendant.
*G. A. Bruce,* for the plaintiff.