ROCKHILL IRON & COAL CO. v. CITY OF TAUNTON.

(District Court, D. Massachusetts. September 8, 1919.)

No. 626.

1. MUNICIPAL CORPORATIONS ☞123—MANAGER OF UTILITY NOT "PUBLIC OFFICER."

Persons who manage business activities undertaken by municipalities for profit or for the accommodation of their citizens are not public officers, but business agents.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Public Officer.]

2. PRINCIPAL AND AGENT ☞99—IMPLIED POWERS OF GENERAL AGENT.

Where an entire business is placed under the management of an agent, the authority of the agent may be presumed to be commensurate with the necessities of the situation.

3. MUNICIPAL CORPORATIONS ☞206—AUTHORITY OF MANAGER OF LIGHTING PLANT.

The powers of a manager of a publicly owned lighting plant, appointed under a statute (St. Mass. 1914, c. 742) giving him general authority, subject to control of the mayor, are not greater than those of the manager of a privately owned plant.

4. MUNICIPAL CORPORATIONS ☞232—AUTHORITY OF MANAGER OF LIGHTING PLANT.

The manager of a municipal lighting plant *held* not to have authority to bind the city by a contract for the entire coal supply for the plant for 2½ years ahead, and extending 1½ years beyond his term of office.

5. MUNICIPAL CORPORATIONS ☞248(3)—RATIFICATION OF CONTRACT.

Where manager of municipal lighting plant contracted for purchase of coal supply for term long beyond his tenure of office, the mere acceptance by his successor of deliveries for some weeks after he became manager was not a ratification of the contract in the absence of corporate action by the city.

6. LICENSES ☞16(½)—FOREIGN CORPORATION SELLING COAL.

A foreign corporation, which contracted to furnish coal to a Massachusetts city, the contract being signed on behalf of the city in Massachusetts, and afterwards by the company in another state, and which had not previously solicited orders in the state, *held* not subject to the Massachusetts statute (St. 1903, c. 484) requiring coal dealers to obtain licenses.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. SALES ⊗381(1)—BREACH OF CONTRACT; SELLER'S MEASURE OF DAMAGES.**

Measure of damages for breach of contract by a city to buy the coal required by its lighting plant for a term from plaintiff at a stated price *held* to be the difference between the contract price of the coal refused and what plaintiff could have sold it for to others.

At Law. Action by the Rockhill Iron & Coal Company against the City of Taunton. Trial to court. Judgment for defendant.

Asa P. French, of Boston, Mass., and Louis Swig, of Taunton, Mass., for plaintiff.

Albert R. White, 2d, and John B. Tracy, both of Taunton, Mass., and Harvey H. Pratt, of Boston, Mass., for defendant.

MORTON, District Judge. In this action a jury was waived. It was submitted to the court upon an agreed statement of facts, and, in addition thereto, upon oral testimony bearing on three issues defined in the agreed statement, as to which issues the parties were unable to agree upon the facts. The case is to be decided upon the agreed statement and the court's findings of fact on the issues stated.

As to the first issue: The testimony of Mr. Livingston, treasurer of the plaintiff company, and of Dr. Golden, formerly manager for the defendant, and of Mr. Swig, who acted as counsel for Dr. Golden in the transaction, is in substantial agreement, and is not controverted. In accordance therewith, I find that the contract upon which this suit is brought was signed first by the defendant's manager in Massachusetts; that it was then sent in duplicate to the plaintiff's treasurer in Pennsylvania and was signed by him there; and that one copy of it was then returned to the defendant's manager, or to Mr. Swig for him.

As to the second issue: There is no evidence that the plaintiff, prior to the execution of said contract, ever solicited business by agents or representatives within this commonwealth, and I find that it had never done so.

The third issue relates to damages.

The contract sued on was made by Dr. Golden, as manager of the Taunton municipal lighting plant, in June, 1913. It was for the purchase of the entire coal supply for the lighting plant for the rest of that year, and for the full calendar years of 1914 and 1915. Dr. Golden's term of office expired on July 1, 1914, and he was not reappointed. A new manager came in on that date, and on August 7, 1914, he disaffirmed the contract as to the coal remaining to be delivered under it. Up to that date there had been delivered and paid for 7,866 tons, of which 2,336 tons were accepted and paid for after Dr. Golden ceased to be manager of the plant.

The defendant contends that the contract, by reason of the length of time which it covered, was not within Dr. Golden's authority to make, as manager of its lighting plant, and that it is not bound thereby. No express authority to enter into this contract was conferred upon Dr. Golden, either by the mayor or by the city council of Taunton, and the contract was never ratified by them. The power to make it was conferred, if at all, by the statute under which the defendant

⊗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

operated its municipal lighting plant. St. Mass. 1914, c. 742. It provides (section 113) for the appointment, by the mayor, of a "manager" who—

"shall, under the direction and control of the mayor, * * * and subject to the provisions of this act, have full charge of the operation and management of the plant, the manufacture and distribution of gas or electricity, the purchase of supplies, the employment of agents and servants, the method, time, price, quantity and quality of the supply, the collection of bills, and the keeping of accounts."

[1, 2] The principal question is whether, under the statute referred to, and upon the facts agreed and found, it was impliedly within the power of the manager of a municipal lighting plant to make a single contract for the entire coal supply required by the plant for 2½ years ahead, and extending 1½ years beyond his term of office.

A "public officer," in the strict use of the words, cannot, generally speaking, bind the public beyond his term of office, without express authority to do so; but there is no such limitation on ordinary agents. Manley v. Scott, 108 Minn. 142, 121 N. W. 628, 29 L. R. A. (N. S.) 652. Persons who manage business activities undertaken by municipalities for profit, or for the accommodation of their citizens, are not public officers, but business agents. Dillon on Municipal Corporations (5th Ed.) §§ 39, 109, 131, 1303; Abbott, Municipal Corporations, § 257. Their powers, where not defined or limited by statute, or by the terms of appointment, are determined by the ordinary principles of agency. So far as such powers rest on implication, they depend largely on the character of the business intrusted to the agents, and presumably include all that may be reasonably necessary for the full accomplishment of that business, in the ordinary way, under such conditions as ordinarily arise.

"The general rule is, 'where an entire business is placed under the management of an agent, the authority of the agent may be presumed to be commensurate with the necessities of the situation.'" Cullen, J., Lowenstein v. Lombard, Ayres & Co., 164 N. Y. 324, 329, 58 N. E. 44, 45, quoting Huffcut on Agency, p. 112, § 107.

"The question in this case is whether this authorized McCoy to make a contract binding upon the defendant for the issue of a policy of insurance. In determining this question the prevailing usage in transacting such business must be regarded; as it is an elementary principle that the delegation of an authority to transact any business includes an authority to transact it in the usual way, and to do the acts usual in its accomplishment." Grover, J., Ellis v. Albany City Fire Ins. Co., 50 N. Y. 402, 406 (10 Am. Rep. 495).

"Municipal officers, acting under general authority, cannot bind the municipality for a longer time than is reasonable in view of the nature of the subject matter." Munson, J., Barre v. Perry, 82 Vt. 301, 309, 73 Atl. 574, 577.

See, too, Sheldon v. Fox, 16 L. R. A. 257, note.

[3] The general powers of the manager of a publicly owned plant under the statute referred to (St. Mass. 1914, c. 742) are certainly not greater than those of the manager (under whatever name designated, treasurer, agent, etc.) of a privately owned one. The city might rightly assume that, in designating a manager thereunder, it authorized him to run its lighting plant in the ordinary business way. Persons dealing with him were bound to take notice of this limitation on his authority.

Washington Gaslight Co. v. Lansden, 172 U. S. 534, 547, 19 Sup. Ct. 296, 43 L. Ed. 543; Mechem on Agency (2d Ed.) § 980.

[4] The facts before the court contain nothing from which it can be inferred that contracts as long as this are ordinarily made for lighting plants; and the contract does not relate to something, as to which the court can see that a long term was necessary or advantageous, as, for instance, to real estate, or to arrangements for the supply or purchase of water, light, or other service, involving an extensive plant or preparation. See McQuillin on Municipal Corporations, § 1253; Columbus Water Co. v. Columbus, 48 Kan. 99, 28 Pac. 1097, 15 L. R. A. 354, and note. No circumstances appear from which it can be seen that the contract was necessary or advantageous to the defendant, or might fairly be so considered.

The burden being upon the plaintiff to establish its case, unless the court can say, as a matter of common knowledge, that the contract was "reasonable in view of the nature of the subject-matter" (Munson, J., supra), the plaintiff must fail. The precise extent to which courts take judicial notice of the way in which any particular kind of business is usually carried on, is not easy to state.[1] Obviously they cannot go beyond the point to which usage is so generally established and well recognized as not to be open to fair difference of opinion. It would hardly be denied, for instance, that the manager of a lighting plant had presumptive authority to contract for six months' coal supply; but it would hardly be contended that he had such authority to contract for six years' supply. As was said in Dunton v. Derby Desk Co., the powers of a general manager "may be a question of fact" (Lothrop, J., 186 Mass. 37, 71 N. E. 92); but they are not unlimited.

Upon all the evidence the contract in question does not appear to have been within the actual or apparent powers of the defendant's manager. If I took judicial notice of what I suppose to be the usual business practice in such matters, I should hold that the contract was clearly outside it, and that, for the manager of a public plant to buy at a single time, and by a single contract, and from a single seller, without any emergency, and without calling for public bids, all the coal needed by the plant for a period of 2½ years, extending 1½ years beyond his own term of office, was a transaction so far out of the ordinary course of business that it did not lie within his actual or implied authority. Good business management requires an electric plant to make provisions for a reasonable time in advance for its coal supply, but contracts going beyond such a period become essentially and unnecessarily speculative.

[5] Upon the facts, agreed and found, with such inferences as may properly be drawn, it is not established that the contract sued upon was actually or impliedly authorized by the defendant. The mere acceptance by the new manager of deliveries under the contract

---

[1] See Fay v. Noble, 12 Cush. (Mass.) 1, 6–7; England v. Dearborn, 141 Mass. 590, 6 N. E. 837; Merchants' Bank v. Citizens' Gaslight Co., 159 Mass. 505, 34 N. E. 1083, 38 Am. St. Rep. 453; Dunton v. Derby Desk Co., 186 Mass. 35, 37, 71 N. E. 91; Millikin v. Edgar County, 142 Ill. 528, 32 N. E. 493, 18 L R. A. 447.

for a few weeks after he came into office, unaccompanied by corporate action on the part of the defendant, was not a ratification of the contract for the balance of the term.[2]

I therefore, on all the facts and evidence, find and rule that the defendant rightfully terminated the contract on August 7, 1914, and is not liable for its refusal to accept subsequent deliveries thereunder.

[6] This is sufficient to dispose of the case, but, in view of the possibility of an appeal, further findings and rulings ought perhaps to be made covering the entire case. I rule that the statute of 1903 (St. Mass. 1903, c. 484) requiring coal dealers to take licenses did not apply to the plaintiff, and that the contract in question was not illegal or invalid by reason of the plaintiff's noncompliance with said statute.

[7] As to the measure of damages, the plaintiff has introduced evidence showing what its profits would have been on the undelivered portion of the contract. The amount of coal on which this computation is based is the amount actually used by the plant during the remainder of the period covered by the contract. The measure of damages is not the profit which the plaintiff would have made upon the undelivered portion of the coal, but the difference between the contract price and what the plaintiff could have sold the coal for to other persons. For aught that appears, the plaintiff may have resold to other persons all the coal contracted for and not taken by the defendant, at a price equal to that specified in the contract. If so, it suffered no loss.

On all the facts I find and rule that the plaintiff, if entitled to recover, is entitled to recover only nominal damages. I give such of the requests as are consistent with this memorandum; the others I refuse.

Judgment for defendant.

[2] The evidence as to ratification appears rather incomplete; but after it became apparent to me that the point would have to be considered, the parties were so informed by the court, and were afforded an opportunity to submit further testimony or agreed facts bearing upon it. After considering the matter for some time, neither desired to do so. A large part of the delay in decision was so caused.