LOEW v. HAYES MANUFACTURING CO.

1. MASTER AND SERVANT—CONTRACTS—CONSTRUCTION—OFFER AND ACCEPTANCE.
   An offer in a contract of employment reading "We will agree to pay you at the rate of $6,000 the first year, $6,600 the second year, and $7,200 the third year," may fairly be inferred to contemplate a hiring for three years, and, when accepted, will be construed to result in a hiring for three years.

2. SAME—DISCHARGE OF EMPLOYEE—JUSTIFICATION—QUESTION FOR JURY.
   The question as to whether defendant employer was justified in terminating plaintiff's employment before the expiration of the contract was properly submitted to the jury, under the evidence.

3. CORPORATIONS—AUTHORITY OF PRESIDENT TO CONTRACT—QUESTION FOR JURY.
   The question as to whether the president of defendant corporation had authority to make a three-year contract of employment with plaintiff, held, under the evidence, properly submitted to the jury.

Error to Wayne; Webster (Arthur), J.   Submitted April 28, 1922.   (Docket No. 80.)   Decided June 5, 1922.

Assumpsit by Oscar A. Loew against the Hayes Manufacturing Company for breach of a contract of employment.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Beaumont, Smith & Harris* (*Charles Wright, Jr.,* of counsel), for appellant.

*Stellwagen, MacKay & Wade,* for appellee.

On duration of contract of hiring which specifies no term, but fixes compensation at a certain amount per day, week, month, or year, see notes in 25 L. R. A. (N. S.) 529; 51 L. R. A. (N. S.) 629.

MOORE, J.    In December, 1917, the plaintiff was a resident of Cleveland.    He received a letter reading as follows:

"HAYES MANUFACTURING COMPANY
Manufacturers of
Automobile Sheet Metal Parts and Bodies
General Offices, Detroit, Mich.
Phone, Walnut 400.
"Detroit, Mich., December 3, 1917.
"Mr. O. E. LOEW,
"1250 W. 76th Street,
"Cleveland, Ohio.
"*Dear Mr. Loew:* (All statements or agreements contained in this letter are contingent on strikes, accidents, fires or any other causes beyond our control.)
"As per our conversation yesterday we will agree to employ you at the rate of six thousand dollars ($6,000.00) the first year, sixty-six hundred dollars ($6,600.00) the second year and seventy-two hundred dollars ($7,200.00) the third year—same payable monthly in case you decide to come with us.
"Your work will consist generally of tool designing, special machinery, engineering and other things pertaining to your line of work, and no doubt can be of great assistance to us in our sales department in obtaining new business.
"In other words I feel that you should be a 'free lance' to be at the service of the writer and it might be necessary to occasionally visit the Hayes-Ionia factories at Grand Rapids and Ionia, Michigan, on some consultation work, etc.
"I trust you will be in position to accept our offer and awaiting your reply, remain
"Yours very truly,
"HAYES MANUFACTURING COMPANY,
"H. J. HAYES (Signed)
"Ass't. to President."

The plaintiff accepted the offer contained in the letter in writing and entered upon his employment January 3, 1918, and continued to work until June 13, 1918, when he was discharged.    He sued to recover damages.    The case was tried before a jury.

He had a verdict and judgment in the sum of $8,200. The case is brought here by writ of error.

We quote from the brief of counsel:

"The questions presented by the record and assignments of error and which are raised by the defendant as reasons why the judgment should be reversed, are as follows:

"(1) The contract is not a contract for three years but a contract for an indefinite period only.

"(2) The court should not have construed the contract with the aid of surrounding facts and circumstances.

"(3) The defendant was justified in terminating plaintiff's employment.

"(4) Mr. Hayes had no authority to make a three year contract of employment on behalf of defendant."

1. Counsel state their claim under this head very tersely as follows:

"The contract states that the plaintiff is employed 'at a rate' of compensation. It does not state that he is employed for one year or any other period. The company does not agree to pay him this compensation for each of the three years mentioned, but at the rate of certain yearly amounts for each of the three years in case he is there. An increased scale is provided for in case the plaintiff remains in defendant's employ during the periods mentioned. It is a contract fixing the rate of compensation but not fixing the term of employment."

Defendant insists it could terminate the contract at will if it desired and cites in support of its contention *Martin* v. *Insurance Co.,* 148 N. Y. 117 (42 N. E. 416); *Stein* v. *Kooperstein,* 102 N. Y. Supp. 578; *Orr* v. *Ward,* 73 Ill. 318; and other authorities cited in the brief of counsel.

It must be admitted there is a conflict in the authorities. In Massachusetts the rule is not as contended for the appellant. We quote from *Maynard* v. *Royal Worcester Corset Co.,* 200 Mass. 1 (85 N. E. 877), as follows:

"The evidence was somewhat conflicting, but having regard only to its aspects most favorable to the plaintiff (as we must in passing upon the action of the judge of the superior court), would justify a finding that he had been in the employ of the defendant for several years, with the duty, among others, of figuring costs; he was also a director of the company, and always received his pay weekly; the financial year of the defendant began on the first day of December, and on December 9, 1904, its board of directors voted that the salaries of the president, treasurer, clerk, one Bennett and the plaintiff 'be increased twenty per cent. on the amount of their salaries for the year 1904;' a short time thereafter a single payment for the amount so voted for the year then just ended was made to the plaintiff; under date of December 20, 1905, the defendant's board of directors passed a vote respecting the same persons, that their 'salaries * * * be increased twenty per cent. on the amount of their present salaries for the year 1905;' on December 12 or 14, 1906, the treasurer of the defendant said to the plaintiff, 'Mr. Fanning requests me to say your salary for the coming year will be $5,000, and he also wished me to state that your last year's salary will be $5,000;' the salary for the year preceding had been $4,000, and $1,000 was immediately paid to the plaintiff, and the weekly payments thereafter made were on the basis of $5,000 per year; about the middle of September, 1907, Mr. Fanning, the president of the defendant who was authorized to employ and discharge employees and fix their salaries, said to the plaintiff, that unless he changed certain conditions, his contract would terminate January 1, to which the plaintiff replied, 'If you wish * * * I will accept and make my plans accordingly January first.' In the latter part of September the plaintiff was discharged without adequate cause.

"Whether there is a contract for services for a definite period of time in any case depends upon all the attendant conditions surrounding the agreement, as well as upon its terms, when the latter are not specific and clear. Several features tend to support the contention that the plaintiff was employed for a year from the first of December, 1906. For three years at least there had been an annual readjustment

of compensation early in December.   Where there has
been a recognition of annual employment, the bare
continuance of service after the expiration of the term
without anything being said is of some importance
in the inquiry, whether the contract of service is re-
newed by implication for the like period.   *Dunton* v.
*Derby Desk Co.,* 186 Mass. 35 (71 N. E. 91).   The
word 'salary' was used both in the vote of the board
of directors for the years 1904 and 1905 and in the
conversation between the treasurer of the defendant
and the plaintiff, in describing the compensation
which the plaintiff was to receive.   This word is per-
haps more frequently applied to annual employment
than to any other, and its use may import a factor of
permanency.   *Henderson* v. *Koenig,* 168 Mo. 356 (68
S. W. 72, 57 L. R. A. 659) ; *People* v. *Myers,* 11 N. Y.
Supp. 217.   See *sub nomine* Burrill's Law Dictionary.
The unit of time used in describing the compensation
was one year.   In many jurisdictions this fact stand-
ing alone is regarded as sufficient evidence of the term
of employment, and perhaps this is the implication of
*Nichols* v. *Coolahan,* 10 Metc. (Mass.) 449.   Although
some courts hold that a hiring at so much a year,
where no time is specified, is indefinite and may be
terminated at will (see *Martin* v. *Insurance Co.,* 148
N. Y. 117 [42 N. E. 416] ; *Pinckney* v. *Talmage,* 32
S. C. 364 ; *Prentiss* v. *Ledyard,* 28 Wis. 131 ; *Haney*
v. *Caldwell,* 35 Ark. 156 ; *Parlett* v. *Guggenheimer,*
67 Md. 542 [10 Atl. 81, 1 Am. St. Rep. 416] ; *Orr* v.
*Ward,* 73 Ill. 318 ; *The Pokanoket,* 84 C. C. A. 49, 156
Fed. 241), the weight of authority is that this
circumstance alone, in the absence of any other con-
sideration impairing its weight, will sustain a finding
that there was a hiring for that period.   *Emmens* v.
*Elderton,* 4 H. L. Cas. 624, 640 ; *Buckingham* v. *Surrey
& Hants Canal Co.,* 46 L. T. (N. S.) 885 ; *Foxall* v.
*International Land Credit Co.,* 16 L. T. (N. S.) 637 ;
*Chamberlain* v. *Detroit Stove Works,* 103 Mich. 124 ;
*Beach* v. *Mullin,* 5 Vroom [N. J. Law], 343 ; *Moss* v.
*Decatur Land Improvement & Furnace Co.,* 93 Ala.
269 (9 South. 188, 30 Am. St. Rep. 55) ; *Young* v.
*Lewis,* 9 Tex. 73 ; *Kellogg* v. *Insurance Co.,* 94 Wis.
554, 558 (69 N. W. 362) ; *Magarahan* v. *Wright,* 83
Ga. 773 (10 S. E. 584) ; *Smith* v. *Theobald,* 86 Ky.
141, 146 (5 S. W. 394) ; *Kirk* v. *Hartman,* 63 Pa.

St. 97; *Luce* v. *San Diego Land & Town Co.* (Cal.), 37 Pac. 390; *Horn* v. *Western Land Ass'n,* 22 Minn. 233; *Cronemillar* v. *Duluth-Superior Milling Co.,* 134 Wis. 248 (114 N. W. 432) ; *Jones* v. *Vestry of Trinity Parish,* 19 Fed. 59. Without reviewing the cases or analyzing the principles to determine which is the sounder view, it is enough to say that the use of the sum of money equivalent to a year's pay, in describing the amount which the plaintiff was to receive, was proper for consideration in connection with other incidents. The length of the term of service reasonably inferable as the understanding of the parties, from their words, course of dealing and other acts, was a fact to be determined upon all the evidence. Grouping all these circumstances, and giving them the color most favorable to the plaintiff, as the trial judge had a right to do, we cannot say that his finding, that the contract alleged in the first count was made, was unjustified. *Tatterson* v. *Suffolk Manfg. Co.* 106 Mass. 56."

See, also, *Franklin Mining Co.* v. *Harris,* 24 Mich. 115; *Graves* v. *Lyon Bros. & Co.,* 110 Mich. 670; *Chamberlain* v. *Detroit Stove Works,* 103 Mich. 124.

We do not think the language of the contract is ambiguous. When it is said: "We will agree to pay you at the rate of $6,000 the first year, $6,600 the second year, and $7,200 the third year" it is fairly inferable that a hiring for three years is contemplated and offered and, when accepted, it is a hiring for three years; and we so construe the language used.

This conclusion makes it unnecessary to discuss the second question raised by counsel for appellant.

3. Was the defendant justified in terminating plaintiff's employment? This was a question of fact. We have a record of more than 400 pages. The great bulk of this record is devoted to testimony bearing upon the question stated under this head. The question was submitted to the jury upon a fair charge in which the court gave defendant's written requests

bearing upon that subject.   The jury found in favor of the plaintiff.

4. Did Mr. Hayes have authority to make a three-year contract of employment on behalf of defendant. It is claimed he did not by the appellant.   We quote from the brief:

"The by-laws of the company provide that the management of the affairs of the company shall be vested in a board of nine directors.   The board shall determine who has power to sign contracts and has power to delegate any power in current business to any committee or officer.   The president shall have general supervision over the affairs of the company subject to the board of directors.   In 1909 the board passed a resolution to the effect that where it was necessary to sign contracts with employees that the opinion of members of the board regarding such contracts should be secured previous to signing same. This resolution has never been changed."

Mr. Hayes was president of the defendant company when the letter was written and had been for years. He was sworn as a witness.   We quote some of his testimony:

"Mr. Smith was very active with the Hayes Manufacturing Company, in fact was our counsel, and I took up all these matters with him.   I had a conversation with Mr. Smith regarding the contract of employment between the Hayes Manufacturing Company and Mr. Loew.   I do not recall the date but it was before Mr. Loew was hired.   Mr. Smith was a director of the company at that time.

"I had a conversation with Mr. Carrow in the latter's office about the contract of employment between the Hayes Manufacturing Company and Mr. Loew sometime before Mr. Loew was employed.   Mr. Carrow was secretary and treasurer of the company and also a director.   There were seven directors in all.   Besides Mr. Smith, Mr. Carrow and myself they were: Mr. H. H. Sanger, connected with the National Bank of Commerce; Mr. Frank W. Blair, of the Union Trust Company; Mr. James H. Flynn; and Mr. Carleton Higbie, a broker of this city.   *   *   *

"Mr.Sanger was vice-president and acted as president during my absence at the directors' meetings. He did not take any more active part. Mr. Blair, Mr. Flynn and Mr. Higbie were not active. Mr. Smith was active in the affairs of the company in the fall of 1917 and the first six months of 1918. The company was in war work. We were in Washington together trying to get contracts. He was not as active however as Mr. Carrow, who was the secretary and treasurer and devoted all his time to the affairs of the company."

Mr. Hayes testified in great detail as to the many and the important contracts he made on the part of the company. The trial judge charged the jury in part as follows:

"The first question for your consideration is this: Is this agreement the agreement of the defendant company? Unless it is they are not liable in this action. The determination of this question depends upon whether Mr. Hayes, president of the defendant company, had implied authority to enter into the contract, and if he did not have such implied authority, then was the agreement made without authority, afterwards ratified by the defendant company?

"It is the claim of the plaintiff that while there is no evidence of any express authority given by the defendant company to its president, Mr. Hayes, to sign this contract of employment, that the testimony in the case regarding Mr. Hayes' duties at the defendant company, shows that he had implied authority to sign the contract. * * * That the testimony in the case regarding Mr. Hayes' duties as president of the defendant company shows that he had implied authority to sign the contract, that is, that the scope and intent of his authority as president, from the nature of the duties he was given and allowed to perform, was such that this defendant company held Mr. Hayes out to the world at large and to Mr. Loew, the plaintiff, as being clothed with sufficient authority to make and sign the contract. If the defendant company held out Mr. Hayes, its president, as being clothed with sufficient authority to make and sign the

contract, then the defendant company would be liable for his act in so doing.

"The plaintiff also claims that the contract in question at about the time it was made, was called to the attention of certain officers and directors of the defendant company aside from its president, who had knowledge of its terms while plaintiff was working for the defendant company.

"The defendant claims that Mr. Hayes, as president, had no authority to enter into any such contract and that it was never in any manner ratified by the defendant company.

"I charge you as a matter of law, that the management of the defendant company was vested in its board of directors by the by-laws and that the only powers of the president, Mr. Hayes, as disclosed by the by-laws were the general supervision of the affairs of the company subject to the board of directors. The directors have not expressly, by resolution, empowered Mr. Hayes to make this contract with the plaintiff or to make any contracts of employment generally; but the question arises, Has the defendant held out Mr. Hayes as having apparent authority to make this contract or has it ratified the act of Mr. Hayes?

"If you find that the defendant has not done these things, your verdict must be for the defendant.

"The defendant claims that Mr. Hayes has never been in the habit of making contracts with employees for a term of years without the approval of the directors, that this is the first instance of that kind. The defendant also claims that it never knew of the existence of a written contract until about the time that the plaintiff was discharged and so could not have ratified it. The defendant does not claim that it did not know the plaintiff was employed, but that it had a right to assume that his employment was no more than a monthly basis, which was the only basis of employment of all the important officials in existence at the time.

"The defendant also claims that the meeting between Mr. Loew, Mr. Hayes, Mr. Smith and Mr. Carrow was sufficient to at least notify the plaintiff that Mr. Hayes was not the sole person in authority and that Mr. Loew should have seen to it that the con-

tract was approved by the directors.    If these contentions are correct, I charge you that your verdict should be for the defendant.

"Unless you find by a preponderance of the evidence that either the president, Mr. Hayes, had implied authority to make the contract, or that the contract was ratified by the defendant company, then your deliberations will cease at that point and your verdict be for the defendant, no cause for action."

The case was tried with great care.    We find no reversible error.

The judgment is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.