JOEL DORFMAN vs. TDA INDUSTRIES, INC. & another.[1]

Suffolk.   September 21, 1983. — October 17, 1983.

Present: BROWN, KAPLAN, & GREANEY, JJ.

*Contract*, Employment. *Evidence*, Relevancy and materiality. *Practice,
   Civil*, Mistrial, Judicial discretion, Conduct of counsel. *Consumer
   Protection Act*, Availability of remedy, Employment.

At the trial of an action by the former manager of a company for breach
   of an employment contract, the judge did not err in admitting
   evidence of the company's worsening financial condition during the
   period of the plaintiff's management, where sufficient evidence had
   been introduced to permit a conclusion that the company's reverses
   were connected with the plaintiff's shortcomings as a manager.
   [716-718]
In the circumstances, the judge at the trial of an action for breach of an
   employment contract did not abuse his discretion in refusing to declare
   a mistrial based on the plaintiff's claim that counsel for the defendants
   was asking leading questions in order to place inadmissible evidence
   before the jury.  [718-720]
An action by the former manager of a company for breach of an employ-
   ment agreement was not within the scope of the Consumer Protection
   Act, G. L. c. 93A, even though the employment agreement may have
   been executed in partial consideration of the sale of the plaintiff's stock
   in the company.  [720-721]

CIVIL ACTION commenced in the Superior Court on Oc-
tober 14, 1977.

The case was tried before *Cratsley*, J., a District Court
judge sitting under statutory authority.

*John C. Wyman (Anne H. Stossel & Richard L. Medverd*
with him) for the plaintiff.

*Arthur M. Gilman (James W. Murphy* with him) for the
defendants.

───────────────

[1] The Westco Corporation.

GREANEY, J. Following his removal as general manager of the Samuel Hurwitz Division of the defendant The Westco Corporation (company)[2] and reassignment to positions of lesser responsibility, the plaintiff sued the defendants seeking a declaration of rights and damages. In his amended complaint, the plaintiff claimed that the defendants had violated an agreement which guaranteed his employment with the company "in an executive capacity . . . perform[ing] managerial, executive and administrative duties." He also claimed that the defendants had committed unfair and deceptive acts or practices in violation of G. L. c. 93A, § 2(a). The defendants asserted that their decision to remove the plaintiff as general manager and to assign him other responsibilities was justified by the plaintiff's gross mismanagement of the company. The breach of contract claim was tried to a jury; the G. L. c. 93A claim to the judge. Both judge and jury found for the defendants. Separate judgments dismissing the plaintiff's two claims were entered. On appeal, the plaintiff argues that he is entitled to a new trial because the judge erroneously (1) allowed evidence of the company's profitability to be presented to the jury despite case law prohibiting its admission; (2) denied a motion for mistrial based on defense counsel's improper use of leading questions; and (3) ruled that G. L. c. 93A had no application to the case. We find no error.

---

[2] Relevant background information is as follows: The Samuel Hurwitz Division of The Westco Corporation came into existence as a result of the sale, in 1972, of the Samuel Hurwitz Company, a wholesale plumbing and heating business, to the defendant, The Westco Corporation, a wholly owned subsidiary of the defendant TDA Industries, Inc. At the time of the sale, fifty percent of the capital stock of the Samuel Hurwitz Company was owned by the plaintiff's family. The plaintiff held 4.005% of the total stock of the company. The Samuel Hurwitz Company had been managed by Herman J. Dorfman, the plaintiff's father. As a consequence of the sale, the plaintiff and his brother executed employment agreements with the defendants which promised that they would succeed their father as "co-managers" of the company. In March, 1976, Herman J. Dorfman stepped down as general manager of the company and was succeeded by the plaintiff at that time. The plaintiff was removed as general manager in February, 1977. The plaintiff's brother held the position of operations manager during the plaintiff's tenure and ultimately left the company.

1. As noted (see note 2, *supra*), the plaintiff was appointed general manager of the company in March, 1976, and was removed from that position in February, 1977. The plaintiff was subsequently assigned different duties, which the jury could have found came to involve a considerable number of nonexecutive, essentially clerical tasks. In September, 1977, the plaintiff stopped work and notified the defendants that he considered their conduct in replacing him as general manager and assigning him different responsibilities a breach of his employment agreement.

At trial, the plaintiff did not dispute the defendants' authority to remove him as general manager and to redefine his duties if cause was provided by his mismanagement of the company's affairs. As a result, the evidence focused almost exclusively on the question whether the defendants' actions were justified. Evidence was introduced which could have persuaded the jury that the plaintiff had been an incompetent manager. The plaintiff argues, however, that other evidence was admitted in violation of the principles set forth in *Dunton* v. *Derby Desk Co.*, 186 Mass. 35 (1904), which could have led the jury to conclude that the defendants' conduct was justified, thus permitting the verdict to rest on an untenable ground. The criticized evidence includes (1) an exhibit, covering the period between August, 1976, and February, 1977, which shows the percentages of the company's accounts receivables overdue for more than ninety days, (2) an exhibit covering the period between February, 1976, and February, 1977, which depicts the company's cash balance and accounts payable, and (3) testimony from various witnesses concerning the status of the company's cash position, sales, and accounts payable and receivable both prior to and during the plaintiff's term as manager. The disputed evidence generally tended to show that while the plaintiff was general manager the company had lost business and suffered a reduction in profits.

The *Dunton* case involved the discharge of a factory superintendent. His employer alleged that the discharge was justified by the superintendent's negligent or wilful failure

to perform the duties for which he had been employed. To support its claim, the employer offered to prove that it had lost business while the plaintiff was in charge of its factory, and that the losses were due to lack of production traceable to the factory. The Supreme Judicial Court held that the evidence had been properly excluded stating: "If the plaintiff had neglected or wilfully failed to perform his duties this was susceptible of direct proof, and the loss or profit of a manufacturing company is dependent upon so many conditions that there is no necessary connection between them and the conduct of the superintendent." 186 Mass. at 38.

*Dunton* recognizes that a loss of business or profits may result from a variety of circumstances for which a company's management bears no responsibility, such as declines in the industry, tighter sources of credit, unexpected loss of suppliers, and countless other setbacks occasioned by competitive market situations. Thus, to avoid — under the guise of justification — the introduction of immaterial evidence on collateral subjects, see *Peck* v. *Dexter Sulphite Pulp and Paper Co.*, 164 N.Y. 127, 129-130 (1900), *Dunton* suggests a rule of causation for cases like the present one. Simply put, this rule precludes the admission of evidence that a business is losing trade, or becoming unprofitable, when that evidence is offered to justify firing a manager, unless it can be shown that "such decrease in business or profits was in some manner due to the fault of [the manager]." *Seelman* v. *Farmers' Co-op. Co.*, 181 Iowa 1228, 1231 (1917).

The evidence challenged by the plaintiff here meets this test. There was evidence from which the jury could have found that, in March, 1976, the plaintiff assumed the duties which his father had performed for a considerable length of time before him as the company's general manager. These duties included responsibility for purchasing and maintaining a balanced inventory, supervising sales and issuing credits, collecting accounts receivables, assuring efficient shipping and deliveries, managing the company's cash, and providing leadership to the entire organization. The jury

could have also found that the company's operations were not so diverse or complex that these responsibilities could not be performed (or at least conscientiously monitored) by the general manager, even though some of the tasks were entrusted on a day to day basis to other employees. There was also direct evidence from which the jury could have found that the plaintiff had permitted conditions in the company's warehouse and storage yards to deteriorate to the point where customer service was adversely affected, that he had tolerated errors in shipping and delivery which led to customer dissatisfaction and loss of sales, and that he had allowed the company's inventory to become imbalanced so that orders could not be filled. There was further direct evidence from which the jury could have concluded that he had not followed recommended and established practices for the collection of receivables which resulted in an excessive number of overdue accounts, that he had mishandled the issuance of credits which led some customers to refuse to pay their bills, and that he had allowed the depletion of the company's cash position, which left the business operating with substantial negative cash balances and rendered it unable to save money by discounting its bills. The evidence also permitted findings that these failures occurred in the face of warnings and specific suggestions for corrections given the plaintiff by his superiors. In this context, we think the judge, who was well-aware of the *Dunton* case in making his rulings, and had a measure of discretion in determining questions of relevance, properly decided that more general evidence of the company's worsening financial condition during the period of the plaintiff's management was admissible because a sufficient factual framework had been provided to allow (although not necessarily to compel) a conclusion by the jury that the company's reverses were connected with the plaintiff's shortcomings as a manager.

2. The plaintiff claims that, on at least twenty-five occasions, the defendants' counsel asked witnesses patently leading questions in order to place evidence before the jury

which was inadmissible under the *Dunton* case. The plaintiff directs our attention to his objections to the questions, the judge's sustaining of those objections, and several reprimands handed out by the judge to defendant's counsel on the ground of leading questions. Arguing that the innuendoes created by the questioning prejudiced the jury's impartial consideration of the conflicting evidence, the plaintiff contends that the jury should have allowed his motion for mistrial in order to correct a purposeful and persistent course of misconduct.

Trial counsel, of course, is under an obligation not to "[s]tate or allude to any matter that he has no reasonable basis to believe is relevant to the case or will not be supported by admissible evidence." S.J.C. Rule 3:07, DR 7-106(C) (1), 382 Mass. 787 (1981). Violation of this duty can be especially perverse if the inadmissible material is injected in the trial by artfully contrived leading questions because it can be difficult to refute the message conveyed. Nevertheless, the remedy, if any abuse is found, is firmly committed to the broad discretion of the trial judge. Thus the standard for reviewing a judge's action in this area was expressed in *Fialkow* v. *Devoe Motors, Inc.*, 359 Mass. 569, 572 (1971), in these terms: "The trial judge, with the benefit of his presence in a vantage position when the alleged improper statement or argument is made, is in the best position to decide what corrective measures, if any, are required and when they should be taken. He has discretion to decide whether a mistrial should be declared or whether instructions should be given to the jury immediately or later as part of their final instructions. In short, he has discretion to decide whether any action is required and, if it is, what it should be and when it should be taken. [An appellate court] will not intervene in such a case where no abuse of such discretion is shown. [Citations omitted]."

Measured against this standard, the plaintiff's contentions do not make a case for reversal. The issues were tried with spirit by both counsel at a trial which lasted eight days. Many objections to the challenged questions were sustained

on grounds unrelated to the *Dunton* case. This suggests that the questions might be seeking relevant information, but suffered from other evidentiary infirmities. In fact, some of the evidence alluded to in the questions was eventually admitted after necessary foundations were laid and proper questions asked. When viewed as a whole, the record does not convey the impression that the defendants' counsel posed the questions in bad faith in order to shore up a weak defense.

Moreover, the judge maintained a firm grip on the conduct of the trial. In addition to sustaining objections promptly, the judge issued warnings to counsel when he thought tolerable bounds were being exceeded. Significantly, the judge gave precise and clear instructions to the jury, when requested to do so by the plaintiff, which defined the evidence that they could consider and specifically cautioned them to disregard any information contained in a question to which an objection had been sustained. The judge also indicated that he would deal with the subject of the scope of the evidence available for the jury's consideration in greater detail in his final instructions. In view of the forceful and direct manner in which the judge handled the matter, we discern no risk of prejudice as a result of the alleged improper tactics. We conclude that no abuse of discretion occurred in the denial of the motion for mistrial.

3. The judge, acting independently of the jury, see *Nei* v. *Burley*, 388 Mass. 307, 311-315 (1983), made findings of fact on the plaintiff's c. 93A claim. The judge concluded that a "claim by an employee against his employer flowing from an employment contract does not appear to be within the scope of G. L. c. 93A [§§ 2(*a*) and 11]; and thus this employment contract and plaintiff's claims surrounding it are not 'trade' or 'commerce' [for purposes of making c. 93A applicable]." The judge's ruling preceded, and to a great extent predicted, the holdings in *Manning* v. *Zuckerman*, 388 Mass. 8 (1983), and *Weeks* v. *Harbor Natl. Bank*, 388 Mass. 141 (1983). The ruling was correct. The fact that the plaintiff's employment agreement may have been executed

in partial consideration of the sale of his stock in the company, see note 2, *supra*, is not, in our opinion, legally sufficient to surmount the obstacles set forth in the *Manning* decision at 11-15, and the *Weeks* decision at 144. While the sale of stock was undoubtedly an important part of the overall transaction, this aspect of the case is principally confined to the provision of services by an employee to an employer within the same organization. The resulting dispute in turn arose out of, and was limited to, the employment relationship and never became "part of the company's commercial activities with regard to consumers, competitors, or other business persons." *Manning* v. *Zuckerman, supra* at 13.

4. The plaintiff's amended complaint sought declaratory relief as well as damages. The two judgments which were entered dismissed the claims contained in the amended complaint. The proper judgment would have been one which declared the rights of the parties. See *Harris* v. *Wayland, ante* 583, 586-587 (1983). The judgments are vacated. A single judgment is to be entered which declares (1) that the defendants did not commit a breach of the plaintiff's employment agreement by removing him as general manager of the Samuel Hurwitz Division of The Westco Corporation and assigning him to different duties within the company; and (2) that the plaintiff has not shown that he meets the prerequisites to recovery set forth in G. L. c. 93A, §§ 2(*a*) & 11. The defendants are to have usual costs of appeal.

*So ordered.*